1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

OTR WHEEL ENGINEERING, INC.,
BLACKSTONE/OTR, LLC, and F.B.T.
ENTERPRISES, INC.,

               Plaintiffs,

   v.

WEST WORLDWIDE SERVICES, INC.,
and SAMUEL J. WEST, individually and
his marital community,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. CV-14-085-LRS

**ORDER GRANTING
MOTION FOR
PRELIMINARY
INJUNCTION**

**BEFORE THE COURT** is Plaintiffs' Motion For Preliminary Injunction
(ECF No. 3).  The motion was heard with oral argument on May 7, 2014.
Leslie R. Weatherhead, Esq., argued for Plaintiffs.  R. Scott Johnson, Esq.,
argued for Defendants.[1]

**I.  PRELIMINARY INJUNCTION STANDARD**

     In order to obtain a preliminary injunction, a plaintiff must establish
irreparable harm is likely, not just possible.  "A plaintiff seeking a preliminary

---

[1] Although Defendant Samuel J. West has appeared in this action through
counsel, his appearance is limited and he has reserved his right to challenge this
court's personal jurisdiction over him.

**ORDER GRANTING MOTION
FOR PRELIMINARY INJUNCTION- 1**

injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008).  Under Ninth Circuit law, "if a plaintiff can only show that there are 'serious questions going to the merits'- **a lesser showing than likelihood of success on the merits-** then a preliminary injunction may still issue if the 'balance of hardships tips sharply in plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013), quoting *Alliance for the Wild Rockies*, 632 F.3d 1127, 1135 (9th Cir. 2011).[2]

"Serious questions are 'substantial, difficult and doubtful, so as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1361-62 (9th Cir. 1988) (en banc), *cert. denied*, 490 U.S. 1035, 109 S.Ct. 1933 (1989).  "Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" *Id.*, quoting *National Wildlife Fed'n v. Coston*, 773 F.2d 1513, 1517 (9th Cir. 1985).

## II.  LIKELIHOOD OF SUCCESS ON THE MERITS

At this juncture, a reasonable inference arises from the evidence presented by Plaintiffs (collectively "OTR") that they have legally protectable

---

[2] Federal courts have held that federal, not state, standards govern the issuance of a preliminary injunction when a federal court is sitting in diversity or exercising supplemental jurisdiction over state law claims.  *Kane v. Chobani, Inc.*, 2013 WL 3776172 at * 2-3 (N.D. Cal. 2013); *Anselmo v. Mull*, 2012 WL 5304799 at *5-6 (E.D. Cal. 2012).

**ORDER GRANTING MOTION**
**FOR PRELIMINARY INJUNCTION- 2**

1  trade secrets regarding the design of their *Outrigger* tire which were

2  misappropriated by Defendants in that Defendants knew or had reason to know

3  those trade secrets were acquired by improper means and used to manufacture

4  their competing tire (now called "Extremelift").

5      Plaintiffs licensed intellectual property rights to Camoplast Solideal to

6  allow Camoplast to build *Outrigger* design molds and use the molds to

7  manufacture *Outrigger* tires.  In 2007, Camoplast subcontracted the

8  manufacture of the *Outrigger* tire to Shandong Hawk International Rubber Co.

9  Ltd. ("Superhawk").  Sometime thereafter, Superhawk contracted to

10 manufacture tires for Defendant West Worldwide Services, Inc. ("West").

11 These are the tires which Plaintiffs allege infringe upon their trade dress (tire

12 tread design).  The design of these tires appears to be virtually identical to the

13 design of Plaintiffs' *Outrigger* tires.  A reasonable inference is that Superhawk,

14 in breach of confidentiality agreements with Camoplast and its predecessor

15 (World Tyres, Ltd.), improperly used *Outrigger* design molds to manufacture

16 the West tires and/or improperly used Plaintiffs' proprietary information to

17 make replica *Outrigger* design molds to manufacture the West tires.  A

18 reasonable inference is that West knew or had reason to know Plaintiffs' trade

19 secrets were used to manufacture West's tires.

20      Accordingly, there is a likelihood Plaintiffs will succeed on the trade

21 secret misappropriation claim they have asserted pursuant to Washington's

22 Uniform Trade Secrets Act (UTSA).  RCW 19.108.010 *et seq.*.[3]  It follows that

23 ///

24

25      [3] While the legal analysis in Plaintiffs' briefing tends to focus on their trade

26 dress infringement claim, it is readily apparent from their arguments and the

27 evidence offered in support thereof that alleged trade secret misappropriation is

28 a critical element of their request for injunctive relief.

**ORDER GRANTING MOTION
FOR PRELIMINARY INJUNCTION- 3**

1  Plaintiffs have at least a "fair chance," if not a likelihood, of success on their
2   trade dress infringement claim, as now discussed.[4]

3       To recover for the infringement of a trade dress under the Lanham Act, 15
4  U.S.C. §1051 *et seq.*, a plaintiff must establish that (1) "the . . . design is
5  nonfunctional," (2) "the design is inherently distinctive or acquired
6  distinctiveness through secondary meaning," and (3) "there is a likelihood of
7  confusion that the consuming public will confuse [the plaintiff's and the
8  defendant's products]." *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d
9  1002, 1005 (9th Cir. 1998).

10      The court recognizes that a competing tire which bears the same tread
11 design as Plaintiffs' tire may not violate Plaintiff's trade dress if the design is
12 ultimately deemed "functional" and therefore, not deserving of trademark
13 protection.  Trade dress protection under federal law is designed to promote
14 competition.  *Secalt S.A. v. Wuxi Shenxi Construction Machinery Company,*
15 *Ltd.*, 668 F.3d 677, 683 (9th Cir. 2012), citing *TrafFix Devices, Inc. v. Mktg.*
16 *Displays, Inc.*, 532 U.S. 23, 28, 121 S.Ct. 1255 (2001).  Such protection "must
17 subsist with the recognition that in many instances there is no prohibition
18 against copying goods and products."  *Id.*, quoting *TrafFix Devices*, 532 U.S. at
19 29.  Rather, "[t]he physical details and designs of a product may be protected
20 under the trademark laws only if they are nonfunctional . . . ."  *Id.*, quoting
21 *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 515 (9th Cir. 1981).  Plaintiffs'
22 trademark of its trade dress is, however, presumptively valid because it was
23 registered in 2012 (U.S. Trademark Registration No. 4,220,169 aka "169

24 _____

25      [4] It appears that all of the other claims pled by Plaintiffs in their Complaint
26 (Washington Consumer Protection Act, tortious interference with business
27 expectancy, and quantum meruit) are derivative of the trade misappropriation
28 and trade dress infringement claims.

**ORDER GRANTING MOTION**
**FOR PRELIMINARY INJUNCTION- 4**

Registration"). *Talking Rain Beverage Co., Inc. v. South Beach Beverage Company*, 349 F.3d 601, 603 (9th Cir. 2003).  This constitutes a presumption of non-functionality.  *Id*. at 605.  While this presumption is rebuttable via this litigation, it creates, at this early juncture, at least a "fair chance" that Plaintiffs will succeed in establishing, as they previously did to the satisfaction of the U.S. Patent and Trademark Office (USPTO), that their trade dress (tire tread design) is non-functional.[5]

It appears "functionality" is the critical issue in regard to Plaintiffs' trade dress infringement claim.  If Plaintiffs' trade dress is non-functional, that significantly bolsters Plaintiffs' argument that their tire tread design has acquired secondary meaning and that there is a likelihood of consumers confusing the *Outrigger* tire with West's "Extremelift" tire.  The evidence presented by Plaintiffs thus far, however, already makes it likely this court will conclude Plaintiffs' tire tread design has acquired secondary meaning over the years such that consumers in the relevant market (manufacturers and users of aerial work platforms) associate the design with the *Outrigger* tire.  Plaintiffs' certificate of registration also gives rise to a presumption of acquired

---

[5] A tire of any design is *de facto* functional, but what renders it functional precluding trademark protection is whether it is *de jure* functional.  The question is whether the tread design of the *Outrigger* tire somehow makes the tire perform better.  *Leatherman Tool Grp. v. Cooper Indus.*, 199 F.3d 1009, 1012 (9th Cir. 1999).  A trademark is functional "when it is essential to the use or purpose of the device or when it affects the cost or quality of the device." *TrafFix Devices*, 532 U.S. at 33.   Plaintiffs, as the "one[s] who seek[] to establish trade dress protection must carry the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device." *Id*. at 30.

**ORDER GRANTING MOTION
FOR PRELIMINARY INJUNCTION- 5**

distinctiveness through secondary meaning and relieves them of the burden of proving secondary meaning. *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F.Supp.2d 1107, 1116 (N.D. Cal. 2010).

Defendants have yet to offer any evidence which disproves that Plaintiffs' tire tread design has acquired secondary meaning among consumers in the relevant market. On the other hand, Plaintiffs offer compelling evidence of secondary meaning, including that Defendants' tire is a virtual carbon copy of Plaintiffs' *Outrigger* tire. *Cybergun , S.A., v. JAG Precision*, 2012 WL 4868104 at *6 (D. Nev. 2012), citing *Swatch, S.A. v. SIU Wong Wholesale*, 1992 WL 142745, *6 (S.D.N.Y. 1992) ("Evidence that the trade dress or product design was intentionally copied by a competitor can support an inference of secondary meaning if the circumstances indicate an intent to benefit from the goodwill of the prior user through confusion"). At least preliminarily, the circumstances indicate an intent by Defendants to benefit from the goodwill of Plaintiffs through consumer confusion. A reasonable inference is Defendants copied Plaintiffs' tire tread design, not because it is functional, but because it is non-functional and has acquired secondary meaning in the relevant market because it is associated with the *Outrigger* tire. Using that design allows Defendants to gain a bigger share of the market by capitalizing on confusion among consumers.

In order to succeed on the merits of their trade dress infringement claim, Plaintiffs must show Defendants' tires will probably cause consumer confusion as to the source or sponsorship of the product- in other words, that Defendants' tires are produced by or affiliated with Plaintiffs. *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987). The Ninth Circuit has identified a non-exclusive set of eight factors to determine likelihood of confusion: 1) strength of the mark; 2) proximity or relatedness of the goods or services; 3) similarity of the sight, sound, and meaning of the marks; 4) evidence of actual

**ORDER GRANTING MOTION
FOR PRELIMINARY INJUNCTION- 6**

confusion; 5) degree to which the marketing channels converge; 6) type of goods and degree of care likely to be exercised by the purchaser; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  The factors are not to be weighed rigidly, but are simply to be considered in assessing the basic question of whether there is a "likelihood of confusion."  *Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). The test is a pliant one.  Some factors are more important than others.  The factors need not be mechanically added up in order to find likelihood of confusion.

The evidence offered by Plaintiffs warrants a preliminary finding of a likelihood of confusion.  The tread design on Defendants' tire is virtually identical to the design on Plaintiffs' tire; a reasonable inference is the Defendants intended to copy the design; and the strength of Plaintiffs' trade dress is significant as consumers in the relevant market recognize Plaintiffs' tire by its tread design.  Defendants have yet to offer evidence suggesting why any of the factors weigh in their favor.

Plaintiffs have at least a "fair chance," if not a likelihood, of success on their trade dress infringement claim.

### III.  LIKELIHOOD OF IRREPARABLE HARM

At one time, irreparable harm could be presumed from a showing of likelihood of success on the merits in trade dress and trademark actions.  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009).  More recently, the Ninth Circuit held this is no longer the case in light of the U.S. Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 338 (2006).  *Herb Reed Enters, LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1249 (9th Cir. 2013).

**ORDER GRANTING MOTION
FOR PRELIMINARY INJUNCTION- 7**

Plaintiffs' evidence adequately demonstrates, as a preliminary matter, that they are subject to a threat of immediate irreparable injury by loss of control of their reputation and goodwill in the relevant marketplace.  If the tire manufactured for West is not the result of a misappropriation of Plaintiffs' trade secrets, a legitimate question arises whether that tire is the same quality as Plaintiff's tire.  If it is not, that may well damage Plaintiffs' reputation as consumers may well blame Plaintiffs for problems related to West's tire. Plaintiffs' relationship with its main customer, Genie Industries, has been strained because of the sale of the West tire to Genie.  West says it was provided a design by Genie and that it made modifications which improved the functionality of the design.  Plaintiffs were compelled to ask Genie if this was true.  In doing so, Plaintiffs  essentially confronted Genie as to whether it was complicit in West's alleged infringement of Plaintiffs' trade dress.  The loss of sales to West's alleged infringing tire can be compensated by money damages. The loss of reputation and goodwill cannot.

## IV.  BALANCE OF EQUITIES

Defendants contend that due to Plaintiffs' delay in bringing any action, Defendants' "Extremelift" tire sales have grown to be approximately one-quarter of Defendants' business and therefore, an injunction "will result in a certain and significant loss in revenue and potential destruction of a significant customer relationship" and "Defendants' business will likely suffer because their business reputation would be harmed by the perception that Defendants infringed legitimate trademark rights of Plaintiffs."

The court finds Plaintiffs have not unduly delayed in bringing this action. Although Plaintiffs indicate it was in October 2012 that they "obtained photographs of the Infringing Tires on a third-party freight truck in Moses Lake, Washington en route from West's facilities to Genie for testing," and that it was

**ORDER GRANTING MOTION**
**FOR PRELIMINARY INJUNCTION- 8**

in April 2013 that they "obtained photographs of the Infringing Tires on a Genie machine at a Terex facility in China," OTR CEO and founder Frederick Taylor says it was not until October 2013 that Plaintiffs were able to obtain a West tire. (ECF No. 4 at Paragraph 14).  The declaration of one of Plaintiff's experts, Owsley Cheek, indicates his comparison of the West tire and the *Outrigger* tire was completed in late January 2014.  (ECF No. 8-2).  This action was filed on April 2, 2014.  It appears that once Plaintiffs had possession of a West tire, they engaged in a prompt and necessary investigation before deciding to pursue claims against Defendants, particularly a claim for misappropriation of trade secrets.

The balance of equities tips sharply in favor of Plaintiffs because they will be damaged by what, at this juncture, appears to be infringing behavior by Defendants who "will only have to stop marketing and selling the infringing products which are only a portion of [their] product offerings." *Cybergun*, 2012 WL 4868104 at *6.  The amount of the injunction bond should, however, be sufficient to compensate Defendants for loss of revenue and destruction of customer relationships in the event Defendants ultimately prevail on the merits.

**V.  PUBLIC INTEREST**

The public interest favors a preliminary injunction where there is a likelihood of confusion.  *Fiji Water Co. v. Fiji Mineral Water USA, LLC*, 741 F.Supp.2d 1165, 1176 (C.D. Cal. 2010).  Avoiding confusion to the consumers is in the public interest.  *Internet Specialties West, Inc. v. Milon-Digiorgio Enters.*, 559 F.3d 985, 993 (9th Cir. 2009).

As discussed above, Plaintiffs have preliminarily demonstrated a likelihood of confusion between their *Outrigger* tire and Defendants' tire. Furthermore, Plaintiffs have presented evidence of actual confusion, that being an instance where Genie sought to purchase the West tire from Plaintiffs.

**ORDER GRANTING MOTION**
**FOR PRELIMINARY INJUNCTION- 9**

(McFadin Declaration, ECF No. 6 at Paragraph 7).  Therefore, the public interest weighs in favor of granting a preliminary injunction.

## VI.  INJUNCTION BOND

Pursuant to Fed. R. Civ. P. 65(c), a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

Defendants offer no argument or evidence regarding the amount of an injunction bond.  Assuming the validity of comments made by Plaintiffs' counsel at oral argument regarding the amount of revenue the Defendants stand to lose per month if they are enjoined from selling their tire (approximately $150,000 per month), and assuming that trial may not occur until approximately a year from now, the court will set the bond amount at $1.8 million ($150,000 x 12 months = $1,800,000).

## VIII.  ORDER

Plaintiffs'  Motion For Preliminary Injunction (ECF No. 3) is **GRANTED**.

1.  Defendants, together with their respective agents, servants, employees, affiliates, attorneys, and persons in active concert or participation with them, are hereby enjoined pending entry of judgment in this action from:

a.  Directly or indirectly making any commercial use of OTR's registered trade dress as defined in U.S. Trademark Registration No. 4,220,169 for the *Outrigger* tire tread design, or any tire tread design that is confusingly similar to the *Outrigger* tire tread design;

**ORDER GRANTING MOTION**
**FOR PRELIMINARY INJUNCTION- 10**

b.  Directly or indirectly using OTR's *Outrigger* trade dress, or any of OTR's trademarks or colorable imitations thereof, in connection with the sale, offer for sale, advertising or promotion of any goods or services;

c.  Directly or indirectly:  (i) manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product or service which tends to relate or connect such product or service in any way to OTR; or (ii) making any false description or representation of origin concerning any goods or services offered for sale by Defendants; and

d.  Directly or indirectly utilizing any of OTR's confidential and proprietary trade secrets for any reason.

2.  This injunction shall take effect upon OTR's posting of a bond of $1,800,000 with the Clerk of the Court for the payment of costs and damages that may be incurred by any party found to be wrongfully restrained by this order.

**IT IS SO ORDERED.**  The District Executive shall forward copies of this order to counsel of record.

**DATED** this  __14th__  day of May, 2014.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING MOTION
FOR PRELIMINARY INJUNCTION- 11**