UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

OTR WHEEL ENGINEERING, INC., BLACKSTONE/OTR, LLC, and F.B.T. ENTERPRISES, INC.,

Plaintiffs,

v.

WEST WORLDWIDE SERVICES, INC., and SAMUEL J. WEST, individually and his marital community,

Defendants.

No. CV-14-085-LRS

**ORDER DENYING MOTION FOR RECONSIDERATION**

**BEFORE THE COURT** are Defendants' Motion For Reconsideration (ECF No. 50) and Motion For Stay (ECF No. 51).[1] These motions are heard without oral argument.

## I. RECONSIDERATION STANDARD

Defendants ask the court to reconsider its May 14, 2014 "Order Granting Motion For Preliminary Injunction" (ECF No. 46) pursuant to Fed. R. Civ. P. 60(b)(6).

[1] Although Defendant Samuel J. West has appeared in this action through counsel, his appearance is limited and he has reserved his right to challenge this court's personal jurisdiction over him and has now filed a Motion To Dismiss (ECF No. 49) on that basis.

Rule 60(b)(6) permits a court to relieve a party from an order for "any reason that justifies relief." It "is to be used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances exist." *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008). "A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009).

## II. DISCUSSION

### A. Trade Secret Misappropriation

This court found there was a likelihood Plaintiffs will succeed on the trade secret misappropriation claim they have asserted pursuant to Washington's Uniform Trade Secrets Act (UTSA). RCW 19.108.010 *et seq*.. The court's analysis was as follows:

> At this juncture, a reasonable inference arises from the evidence presented by Plaintiffs (collectively "OTR") that they have legally protectable trade secrets regarding the design of their *Outrigger* tire which were misappropriated by Defendants in that Defendants knew or had reason to know those trade secrets were acquired by improper means and used to manufacture their competing tire (now called "Extremelift").
>
> Plaintiffs licensed intellectual property rights to Camoplast Solideal to allow Camoplast to build *Outrigger* design molds and use the molds to manufacture *Outrigger* tires. In 2007, Camoplast subcontracted the manufacture of the *Outrigger* tire to Shandong Hawk International Rubber Co. Ltd. ("Superhawk"). Sometime thereafter, Superhawk contracted to manufacture tires for Defendant West Worldwide Services, Inc. ("West"). These are the tires which Plaintiffs allege infringe upon their trade dress (tire tread design). The design of these tires appears to be virtually identical to the design of Plaintiffs' *Outrigger* tires. A reasonable inference is that Superhawk, in breach of confidentiality agreements with Camoplast and its predecessor (World Tyres, Ltd.), improperly used *Outrigger* design molds to manufacture the West tires and/or improperly used Plaintiffs' proprietary information to make replica *Outrigger* design

> molds to manufacture the West tires. A reasonable inference is that West knew or had reason to know Plaintiffs' trade secrets were used to manufacture West's tires.

(ECF No. 46 at p. 3).

The court continues to believe there is a reasonable inference that Superhawk used *Outrigger* molds to manufacture the West tires and/or made replica molds from which to manufacture the West tires. In order to manufacture *Outrigger* tires, Superhawk necessarily used the tire "recipe" provided to it by Camoplast Solideal. A reasonable inference is that it used that same "recipe" to manufacture the West tire which appears to be identical to the *Outrigger* tire.[2]

At this preliminary injunction stage, Plaintiffs have offered sufficient evidence of the uniqueness and novelty of their tire "recipe" so as to establish at least a fair chance of proving that it constitutes a legally protectable trade secret. See Declarations of Frederick B. Taylor (ECF No. 4 at Paragraph 8) and Scott Peck (ECF No. 5 at Paragraph 8c.).

Plaintiffs have also offered sufficient evidence through the Declaration of David Fleischauer (ECF No. 11) to reasonably suggest that when Superhawk commenced manufacturing *Outrigger* tires, it obligated itself through certain "Processing Agreements" to maintain the confidentiality of Plaintiffs' tire "recipe." Although it was not until June 5, 2013 that Superhawk "intervened" in the new Processing Agreement between Solideal and Laizhou Xiongying Rubber Industry Co. Ltd., Mr. Fleischauer also indicates:

///
///

---

[2] See Declaration of Scott Peck, ECF No. 5 at Paragraph 4: "In 2007 . . . Solideal . . ., a member of OTR contracted with . . . Superhawk, to manufacture *Outrigger* tires. At that time, Solideal provided Superhawk with molds and specific instructions on how to prepare and manufacture the *Outrigger* tires."

> In March 2005, the predecessor of a Solideal affiliate by the name of World Tyres, Ltd. entered into a Processing Agreement with Laizhou Xiongying Rubber Industry Co., Ltd.- **an affiliate of Shandong Hawk International Rubber Industry Co. Ltd. ("SuperHawk")**- in which Solideal's affiliate agreed to purchase certain tires.

(ECF No. 11 at Paragraph 2)(Emphasis added). The evidence reasonably suggests that pursuant to the March 2005 agreement, Superhawk was contractually bound to maintain the confidentiality of Plaintiffs' tire "recipe" when it commenced the manufacturing of those tires in 2007.[3]

Based on the aforementioned evidence, Plaintiffs have a fair chance of establishing that Defendants knew or had reason to know that Plaintiffs' tire "recipe" was used to manufacture Defendants' tires. See definition of "Misappropriation" at RCW 19.108.010(2).[4]

**B. Trade Dress Infringement**

Defendants assert the court erred in finding that Plaintiffs have at least a fair chance of succeeding on their trade dress infringement claim. Defendants contend ///

---

[3] Defendants indicate the March 2005 agreement was amended in June 2007, although it is not clear if this amendment was the contract between Solideal and Superhawk testified to by Mr. Peck in n. 2 *supra*, or how it otherwise relates to that contract.

[4] The court clarifies that its trade secret analysis is based on Plaintiff's tire "recipe," not the trade dress (tire tread design), which as Defendants' point out is not a secret, but is subject to a registered trademark in the public domain. Hence, the court will not address Defendants' arguments which assume the court found Plaintiffs' trade dress incorporates trade secrets (alleged failure to retrieve molds sold in bankruptcy; Michael Zhang's declaration testimony that molds used to make Defendants' tires do not employ any OTR secrets).

Plaintiffs failed to meet their burden of proving their tire tread design is inherently distinctive or has acquired distinctiveness through secondary meaning.[5]

In its previous order, this court noted that Plaintiffs' certificate of registration gives rise to a presumption of acquired distinctiveness through secondary meaning and relieves them of the burden of proving secondary meaning. *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F.Supp.2d 1107, 1116 (N.D. Cal. 2010). Defendants assert it is error to rely on the presumptions associated with registration for a finding of distinctiveness or secondary meaning, citing *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863 (8th Cir. 1994). While the court does not have an actual record of the proceedings before the U.S. Patent and Trademark Office (USPTO) on Plaintiffs' trademark application, the statements made by the parties in their briefing and at oral argument indicate the USPTO raised an objection to the inherent distinctiveness of Plaintiffs' tire tread design which Plaintiffs then overcame by presenting evidence of secondary meaning. Plaintiffs' trade dress was therefore registered pursuant to 15 U.S.C. §1052(f). This registration issued on October 9, 2012. This is the date on which the presumption of secondary meaning became effective. *Aromatique*, 28 F.3d at 870, citing *Harsco Corp. v. Electrical Sciences, Inc.*, 9 U.S.P.Q.2d (BNA) 1570, 1571-72 (TTAB 1988). Defendants assert that because Plaintiffs

---

[5] Defendants also summarily take issue with the court's finding that Plaintiffs offered sufficient proof their tire tread design is non-functional and that there is a likelihood Defendants' tire will be confused with Plaintiffs' tire. The court relies on the analysis in its previous order and summarily rejects Defendants' summary contentions which are relegated to a single footnote. (ECF No. 50 at p. 15, n. 8). The court agrees that the relevant inquiry in the likelihood of confusion analysis is whether there was an intent to trade on the goodwill of the Plaintiffs. This court so found in its previous order. (ECF No. 46 at pp. 6-7).

first saw an "infringing tire" in October 2012, and "[a]s these tires were manufactured in China and shipped into the United States for delivery in Oregon, there is no doubt any alleged infringing use of the trade dress occurred prior to October 9, 2012- and thus prior to the date on which any presumption of secondary meaning even arises."

The evidence presented thus far does not permit the court to conclude there is "no doubt" that alleged infringement occurred prior to October 2012 such that Plaintiffs are not entitled to the presumption that their trade dress has acquired secondary meaning.[6] Accordingly, for the purposes of its preliminary injunction analysis, this court did not clearly err in finding Plaintiffs' trade dress registration gives rise to a presumption of secondary meaning which relieves them, at least for the moment, of the burden of proving secondary meaning. As this litigation proceeds, Defendants will have an opportunity to establish that the presumption should not apply and even if it does apply, an opportunity to present evidence to overcome the presumption.

In its preliminary injunction order, this court found Plaintiffs had offered compelling evidence that Defendants' tire is a virtual carbon copy of Plaintiffs' *Outrigger* tire, and that this supported a finding of secondary meaning. *Cybergun, S.A., v. JAG Precision*, 2012 WL 4868104 at *6 (D. Nev. 2012), citing *Swatch, S.A. v. SIU Wong Wholesale*, 1992 WL 142745, *6 (S.D.N.Y. 1992) ("Evidence that the trade dress or product design was intentionally copied by a competitor can support an inference of secondary meaning if the circumstances indicate an intent

---

[6] In *Aromatique*, there was "no doubt" that alleged infringement preceded the trade dress registration. Aromatique alleged Gold Seal used as early as 1985 a trade dress the same as or similar to the dress Aromatique registered under Section 2(f) in 1988. Therefore, Aromatique was not entitled to the presumption that its trade dress had acquired secondary meaning. 28 F.3d at 870.

to benefit from the goodwill of the prior user through confusion"). Defendants dispute that they copied Plaintiffs' trade dress, but note that "[w]here there is a demand for a type of product, capitalizing on that demand by copying that product does not necessarily indicate that the original product has secondary meaning." *Aromatique*, 28 F.3d at 871, citing *Cicena Ltd. v. Columbia Telecommunications Group*, 900 F.2d 1546, 1552 (Fed. Cir. 1990). Defendants say that is the situation here where both tires utilize trademark names (*Outrigger* and *Extremelift*) on the tires themselves and in advertising. Defendants further assert that all other evidence offered by Plaintiffs is not probative of secondary meaning "because none of that evidence separates the claimed trade dress [tire tread design] from the [*Outrigger*] mark that is also used to identify the tires as those of Plaintiffs."

In *Aromatique*, the Eighth Circuit found that "Gold Seal's conspicuous placement of its identifying marks must be seen as an attempt to distinguish its potpourri from Aromatique's." 28 F.3d at 871, citing *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1134 (Fed. Cir. 1993)(holding that defendant's trade dress was not likely to be confused with that of plaintiff because of conspicuous placement on accused dress of defendant's identifying marks). Therefore, "it was clearly erroneous to infer from Gold Seal's copying of Aromatique's product that the marks at issue here had acquired secondary meaning." *Id*.

As the analysis in *Aromatique* makes clear, whether a trade dress has acquired secondary meaning is not divorced from the issue of the likelihood of consumer confusion. As this court noted in its preliminary injunction order, the question is whether "Plaintiffs' tire tread design has acquired secondary meaning over the years such that consumers in the relevant market (manufacturers and users of aerial work platforms) associate the design with the *Outrigger* tire." Frederick B. Taylor, the CEO of OTR Wheel Engineering, Inc. says "[t]he target consumers of the *Outrigger* tires are aerial work platform . . . manufacturers, of

which there are approximately ten in the world," of whom seven are OTR customers. (ECF No. 34 at p. 2, Paragraph 5). Considering the prevalence of *Outrigger* tires in this narrow and specialized market, it is reasonably possible a consumer would believe, by virtue of the tread design on the *Extremelift* tire, that it is purchasing an *Outrigger* tire. The evidence presented so far indicates only one other tire has a tread design identical to the *Outrigger* tire and that is the *Extremelift* tire. And even if the consumer were to notice the *Extremelift* mark on the tire[7] (and prior thereto, the *Exmile* mark[8]), that might not necessarily dissuade it, at least initially and before making further inquiry, from believing this to perhaps be a new and improved version of the *Outrigger* tire for use on aerial work platforms.

As the court noted in its preliminary injunction order, "Plaintiffs have presented evidence of actual confusion, that being an instance where Genie sought to purchase the West tire from Plaintiffs." (ECF No. 46 at p. 10). This court reasonably believes that Plaintiffs could produce more such evidence at trial. In *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984), the Ninth Circuit affirmed the trial court's issuance of a preliminary injunction, finding Sierra had a fair chance of success in proving its mark had acquired secondary meaning because it produced correspondence from consumers stating they understood "Hi-Res Adventure" to identify Sierra's products and "[t]he court could reasonably assume that more evidence in the same vein could be produced at trial."

None of this is to suggest Defendants cannot or will not ultimately prevail on their arguments that Plaintiffs' trade dress has not acquired secondary meaning. Unlike *Aromatique* which involved an appeal from a final judgment on the merits

---

7 Registered on October 15, 2013. (ECF No. 9-1 at p. 4).

8 ECF No. 5 at pp. 5-6, Paragraph 9.

of a trade dress infringement claim, the captioned matter involves issuance of a preliminary injunction. As the Ninth Circuit explained in *Sierra*:

> [T]he [preliminary] injunction is not a preliminary adjudication on the ultimate merits: it is an equitable device for preserving rights pending final resolution of the dispute. The district court is not required to make any binding findings of fact; it need only find probabilities that the necessary facts can be proved.

739 F.2d at 1423. As in *Sierra*, this court has found no more than that Plaintiffs have at least a fair chance of success in proving their tire tread design has acquired secondary meaning and in prevailing on their trade dress infringement claim.

**C. Injunction Bond**

At the preliminary injunction hearing, the court inquired about an appropriate bond amount, but only Plaintiffs' counsel offered any suggestion in that regard. Defendants' counsel had an opportunity to weigh in on the issue, but offered nothing regarding an appropriate bond amount. The court will not alter the significant $1.8 million bond amount which has already been posted by Plaintiffs.

**D. Stay**

Having determined on reconsideration that a preliminary injunction is still warranted, the court will not stay that injunction pending Defendants' appeal to the Ninth Circuit. To do otherwise would undermine and be contrary to the court's reasoning, initially and on reconsideration, finding a preliminary injunction was and remains appropriate. The court understands, however, that Defendants have moved this court for a stay so that they may subsequently seek a stay from the Ninth Circuit in conjunction with their appeal of this court's preliminary

///

///

injunction order and presumably now, this reconsideration order as well. Fed. R. App. P. 8.[9]

## III. CONCLUSION

"Serious questions" have been raised by Plaintiffs' evidence as to: 1) whether their tire "recipe" constitutes a legally protectable trade secret which has been improperly acquired by or disclosed to Defendants; and 2) whether Defendants' trade dress (tire tread design) has been infringed upon by Defendants. These "[s]erious questions are 'substantial, difficult and doubtful, so as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1361-62 (9th Cir. 1988) (en banc), *cert. denied*, 490 U.S. 1035, 109 S.Ct. 1933 (1989). These "[s]erious questions need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" *Id.*, quoting *National Wildlife Fed'n v. Coston*, 773 F.2d 1513, 1517 (9th Cir. 1985).

Because Plaintiffs have shown there are serious questions going to the merits and that the balance of hardships tips sharply in their favor, and because they have also shown they are likely to suffer irreparable harm and the public interest favors a preliminary injunction, they are entitled to a preliminary injunction under Ninth Circuit law. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013), quoting *Alliance for the Wild Rockies*, 632 F.3d 1127, 1135 (9th Cir. 2011).

The court did not clearly err in finding Plaintiffs have a fair chance of success in proving: 1) that their tire "recipe" constitutes a legally protectable trade

---

[9] The court makes no finding at this time whether there has been a violation of its preliminary injunction order.

secret which has been improperly acquired by or disclosed to Defendants; and 2) that their trade dress has acquired secondary meaning and has been infringed upon by Defendants.

Defendants' Motion For Reconsideration (ECF No. 50) and Motion To Stay (ECF No. 51) are **DENIED**.

**IT IS SO ORDERED.** The District Executive shall forward copies of this order to counsel of record.

**DATED** this ___18th___ day of June, 2014.

***s/Lonny R. Suko***

LONNY R. SUKO
Senior United States District Judge