1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

8
9
10
11
12
13
14
15

OTR WHEEL ENGINEERING, INC.,
BLACKSTONE/OTR, LLC, and F.B.T.
ENTERPRISES, INC.,

            Plaintiffs,

   v.

WEST WORLDWIDE SERVICES, INC.,
and SAMUEL J. WEST, individually and
his marital community,

            Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 2:14-CV-00085-LRS

**ORDER DENYING
MOTION TO DISMISS**

16
17
18
19
20
21
22
23
24
25
26
27
28

    **BEFORE THE COURT** is the Defendants' Motion To Dismiss Samuel J.
West And His Marital Community (ECF No. 49).  This motion is heard without
oral argument.  Pursuant to Fed. R. Civ. P. 12(b)(2), Defendants seek to dismiss all
claims against Samuel J. West and his marital community for lack of personal
jurisdiction.  Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants assert the alter ego
allegation regarding Samuel J. West fails as a matter of law and that is another
basis for dismissal of Samuel J. West and his marital community.

    Plaintiffs' Complaint alleges as follows:

        Plaintiffs are informed and believe and therefore allege that
        Samuel J. West is a resident of Iowa, residing at 12747 Highway
        61, Burlington, Iowa 52601.  On information and belief, Mr.
        West is the founder and president of West [Worldwide Services,
        Inc.], responsible for the day-to-day decision-making of West,
        including all those actions alleged herein to be unlawful and
        alleged to have occurred in and affected Plaintiffs' interests
        in Washington and this judicial district.  On information and

**ORDER DENYING
MOTION TO DISMISS -**      **1**

belief, West is operated as Samuel J. West's alter ego.  If Mr. West is a married individual and is residing in Washington or any other community property state, or to the extent Mr. West has assets in Washington, all actions against Mr. West herein are alleged against him and his marital community, and all relief is sought from him and his marital community.

(ECF No. 1 at Paragraph 6).

Plaintiffs' Complaint further alleges:

Personal jurisdiction is proper as to Samuel West, who, on information and belief, directed the activities alleged against him in the State of Washington, including importation of the infringing tires into Washington and sales of the counterfeit and infringing tires in Washington and this judicial district, for delivery in Washington and this district.

(ECF No. 1 at Paragraph 9).

**ALTER EGO AS A BASIS FOR PERSONAL JURISDICTION**

If a corporation is the alter ego of an individual defendant, a court may "pierce the corporate veil" jurisdictionally and attribute "contacts" accordingly. *Certified Building Products, Inc. v. NLRB*, 528 F.2d 968, 969 (9th Cir. 1976).  In other words, if Mr. West is the alter ego of West Worldwide Services, Inc., the contacts of West Worldwide Services, Inc., can be attributed to Mr. West for the purpose of determining whether he is subject to the personal jurisdiction of this court.  West Worldwide Services, Inc., does not contest that it is subject to the personal jurisdiction of this court.

In order to disregard the corporate entity for jurisdictional purposes, Plaintiffs must make out a *prima facie* case under the appropriate substantive law to establish that Mr. West is an alter ego of West Worldwide Services, Inc.. Because subject matter jurisdiction in this case is based on a federal question arising from Plaintiffs' trademark infringement claims under the Lanham Act, 15 U.S.C. §1051 *et. seq.,* federal common law controls whether to "pierce the corporate veil."  The Ninth Circuit generally applies a three factor test for piercing the corporate veil.  A court should consider whether: (1) "there is such a unity of

**ORDER DENYING**
**MOTION TO DISMISS -        2**

interest and ownership between the corporation and the shareholder that the two no longer exist as separate entities," *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1111 (9th Cir. 1979), *citing United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774, 777 (9th Cir. 1977); (2) "failure to disregard the corporation would result in fraud or injustice," *id.*, *quoting Standard Beauty Supply*, 561 F.2d at 777; and (3) either the incorporators of the corporation formed the corporation with fraudulent intent or the corporate form was fraudulently misused following incorporation, or both, *see Board of Trustees v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 773-74 (9th Cir. 1989).

Plaintiffs do not address these factors, nor do they address the similar factors which apply under Iowa and Washington law cited by Defendants.  The e-mails pointed out by Defendants, which perhaps "personalize the business to Mr. West," (ECF No. 68 at pp. 14-15), are simply inadequate to raise a legitimate issue whether: 1) there is such a unity of interest and ownership that Mr. West and West Worldwide Services, Inc., are not separate entities; 2) that fraud or injustice would result from failing to disregard West Worldwide Services, Inc.; or 3) that West Worldwide Services, Inc. was formed with fraudulent intent or was fraudulently misused following incorporation.

Plaintiffs have offered nothing to rebut the statements in Mr. West's declaration (ECF No. 49-2) that: 1) he founded the company with three other individuals, one of whom initially contributed capital along with Mr. West, and all of whom are actively involved in the company and are board members; 2) day-to-day operations are run by two of the board members, other than Mr. West; 3) the company has twenty employees and operates in four locations, but Mr. West does not work out of any of those locations; 4) Mr. West does not have any shared bank accounts with the company and is not responsible for company finances; 5) the company is not undercapitalized; 6) the company maintains separate corporate books which are regularly maintained by one of the other board members who is

**ORDER DENYING**
**MOTION TO DISMISS -**          **3**

1  the company's chief financial officer; 7) the personal finances of Mr. West and his
2  wife are kept separate from company finances, and company financial obligations
3  are paid from company finances; and 8) neither Mr. West or his wife personally
4  own the property at any of the four company locations.

5      The conclusory nature of the allegations in Plaintiffs' Complaint and the
6  evidence offered by Plaintiffs is insufficient to demonstrate that Mr. West is
7  subject to personal jurisdiction under an alter ego theory.

8

9  **PERSONAL LIABILITY/PERSONAL JURISDICTION**

10     Even if Mr. West acted as a corporate agent, that does not necessarily
11 preclude his potential personal liability for trademark infringement.  To be liable
12 for contributory trademark infringement, a defendant must have (1) "intentionally
13 induced" the primary infringer to infringe, or (2) continued to supply an infringing
14 product to an infringer with knowledge that the infringer is mislabeling the
15 particular product supplied.  *Perfect 10, Inc. v. Visa International Service,*
16 *Association*, 494 F.3d 788, 807 (9th Cir. 2007), citing *Inwood Labs., Inc. v. Ives*
17 *Labs., Inc.*, 456 U.S. 844, 855, 102 S.Ct. 2182 (1982).  Defendants contend that
18 "in order to find contributory liability for Mr. West, Plaintiffs would have to show
19 that Mr. West induced, caused or contributed to a third-party's infringing conduct"
20 and "that there was no inducement or contribution to any third party's infringing
21 conduct is demonstrated by the fact that Plaintiffs simultaneously contend that
22 West Worldwide is Mr. West's alter ego."  (ECF No. 75 at pp. 6-7).  As discussed
23 above, the conclusory nature of the allegations in Plaintiffs' Complaint and the
24 evidence offered by Plaintiffs is insufficient to "pierce the corporate veil" under an
25 alter ego theory.  Therefore, Mr. West and West Worldwide Services, Inc., remain
26 separate entities as there is no basis for disregarding the corporate form.

27     Regardless of whether the alleged infringement be of a trademark, a patent,
28 or a copyright, "piercing the corporate veil" is not necessary for a corporate officer

**ORDER DENYING**
**MOTION TO DISMISS -**      **4**

to potentially be held personally liable.  In *Coach, Inc. v. Sapatis*, _____ F.Supp.2d _____, 2014 WL 2815746 (D. N.H. 2014), the plaintiff, Coach, Inc., brought a trademark and copyright infringement action against, among others, Alaina Paul and TABA Enterprises, LLC.  Paul was the owner, manager, and sole member of TABA, a limited liability corporation that owned a flea market and leased the land upon which it operated.  The vendors at the flea market contracted exclusively with TABA to rent space for their booths.  Plaintiff alleged the vendors at the flea market were selling counterfeit Coach bags and sought to hold Paul and TABA liable for contributory trademark counterfeiting, contributory trademark infringement, and contributory copyright infringement.  Paul argued she could not be held personally liable because she was acting at all times as a representative of TABA, the corporation which owned and operated the flea market.  The district court disagreed, concluding that under common law tort and agency principles, which apply because the Lanham Act and the Copyright Act are silent as to secondary liability for another's direct infringement, "Paul may be held personally liable for contributory infringement, **regardless of her relation to TABA**."  2014 WL 2815746 at *3 (emphasis added).  According to the district court:

> It is true, as Paul argues, that her mere "status as an officer of a corporation that has allegedly [contributorily] infringed . . . without more, is not a basis for liability as a contributory infringer." [Citations omitted].  Actions taken or knowledge obtained by a corporation via its agents is not imputed to its officers simply due to their positions within the corporation. [Citation omitted].  **But it does not follow that the corporate form automatically immunizes corporate officers from personal liability for conduct undertaken on the corporation's behalf.**  *See Mone v. Dranow*, 945 F.2d 306, 308 (9th Cir. 1991) ("[F]ederal common hold[s] that corporate officers are personally liable for their torts even if the torts were committed on behalf of the corporation."); Restatement (Third) of Agency § 7.01 cmt. D ("[A]n organizational officer is subject to liability when the officer directly participates in conduct that constitutes a tort."); *see also id.* § 7.01 ("Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment.").

**ORDER DENYING**
**MOTION TO DISMISS -        5**

> Paul's personal contributory liability is dependent on her own knowledge and control over the vendors' alleged infringement, **regardless of whether her actions or omissions were taken in an official or personal capacity.** See *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir. 1987) (recognizing that a corporate official may be held personally liable for trademark infringement even though he acted to benefit the corporation).

*Id*. at *4 (emphasis added).

In a footnote, the court observed that because Paul's personal contributory liability was dependent on her own knowledge and control over the vendors' alleged infringement, regardless of whether her actions or omissions were taken in an official or personal capacity, the Plaintiff did not need to pierce the corporate veil. *Id*. at n. 8, citing *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994)("[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil."); and Restatement (Third) of Agency § 7.01 cmt. d ("If an organizational officer participates in wrongful conduct, the officer is subject to liability [and] [i]t is not necessary to 'pierce the corporate veil' or 'disregard the corporation's existence as a separate legal entity'").

The same has been held true with regard to the personal liability of corporate officers for inducing patent infringement by their corporations, 35 U.S.C. § 271(b), or contributing to infringement by their corporations, 35 U.S.C. § 271(c). *See Wordtech Systems, Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1315-17 (Fed. Cir. 2010).

Plaintiffs' Complaint is brought "against Samuel J. West, individually, his marital community, and his company West Worldwide Services, Inc. (collectively "West" or "Defendants")." All of the factual allegations in the Complaint are made with regard to the Defendants "collectively" and all of the claims pled are asserted against the Defendants "collectively." While Plaintiffs have not

**ORDER DENYING**
**MOTION TO DISMISS -**      **6**

specifically pled "secondary infringement" by Mr. West, it is reasonable to infer as much from the factual allegations of the Complaint combined with the specific allegation that Mr. West "directed the activities alleged against him in the State of Washington, including importation of the infringing tires into Washington and sales of the counterfeit and infringing tires in Washington and this judicial district, for delivery in Washington and this district." (ECF No. 1 at Paragraph 9). The Complaint puts Mr. West on reasonable notice that Plaintiffs seek to hold him personally liable for secondary trademark infringement and for violation of Washington's Consumer Protection Act. With regard to the latter, a corporate officer may face personal liability for conduct which violates the Consumer Protection Act if he "participate[d] in" or "with knowledge approve[d] of" the practice which violates the CPA." *Grayson v. Nordic Constr. Co.*, 92 Wn.2d 548, 554, 599 P.2d 1271 (1979). Though separate from the "piercing the corporate veil" doctrine, this theory of liability recognizes that "[c]orporate officers cannot use the corporate form to shield themselves from individual liability." *State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 322, 553 P.2d 423 (1976).

Just because there is potential personal liability, however, does not answer the question of whether personal jurisdiction over Mr. West should attach in the State of Washington. *See World Wide Stationery Manufacturing v. Bensons International Systems, Inc.*, 2012 WL 2885831 (N.D. Ohio) at *3 (distinguishing *Wordtech Systems, Inc.*, as addressing whether personal liability may attach to a corporate officer in his personal capacity, not whether the court may attach jurisdiction). In *World Wide Stationery*, the district court noted that Ohio courts recognize a fiduciary shield that protects corporate officers from assertion of jurisdiction over them, but they do not apply it when the defendant was "personally involved . . . in a transaction giving rise to the cause of action, and [was] physically present in the state." *Id*., quoting *Walker v. Concoby*, 79

**ORDER DENYING**
**MOTION TO DISMISS -**          **7**

F.Supp.2d 827, 832 (N.D. Ohio 1999). The district court cited two other cases construing Ohio's long-arm statute as requiring the physical presence of the officer in the home forum state in order to overcome the fiduciary-shield doctrine: *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 931 (6th Cir. 1974)(if "suits against officers of national corporations were [in any instance] permitted, the individuals could be sued in every state of the union whenever they make telephone calls or write letters to a customer . . . ."); *Diebold, Inc. v. Firstcard Fin. Servs. Inc.*, 104 F.Supp.2d 758, 761 (N.D. Ohio 2000)(denying exercise of personal jurisdiction because the defendant was never physically present in Ohio, even though he was involved in negotiations giving rise to the claim).

The fiduciary shield doctrine is no longer viable in jurisdictions which apply their long-arm statutes to the full extent authorized by the Due Process Clause. *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 522 (9th Cir. 1989). In these jurisdictions, the appropriate inquiry is simply whether an individual officer or director- acting in a corporate capacity or otherwise- has established sufficient minimum contacts with the forum state. *Id*.; *see also Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482 (1984)(holding that personal jurisdiction over a corporate employee must be based upon that *individual employee's* contacts with the forum; individual defendants' "status as employees does not somehow insulate them from jurisdiction"); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473 (1984)(same). Because Washington applies its long-arm statute (RCW 4.28.185) to the full extent permitted by the Due Process Clause, *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004), a typical minimum contacts analysis must be performed to determine whether Mr. West is subject to this court's personal jurisdiction.

A three-prong test is used to determine whether specific personal jurisdiction is established:

> (1) The non-resident defendant must *purposefully direct*

**ORDER DENYING**
**MOTION TO DISMISS -      8**

*his activities* or consummate some transaction with the forum or resident thereof; *or* perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Mavrix Photo, Inc. v. Brand Techs, Inc.*, 647 F.3d 1218, 1228-29 (9th Cir. 2011) (emphasis in original)(quotation and citations omitted). The plaintiff bears the burden on the first two prongs of the test. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). If the plaintiff succeeds in satisfying the first two prongs, the burden then shifts to the defendant "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78, 105 S.Ct. 2174 (1985)).

In determining whether a defendant purposefully directed activities toward a forum state, courts in the Ninth Circuit employ the "effects test." *Mavrix Photo*, 647 F.3d at 1228. "The 'effects' test which is based on the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), requires that 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)).

Based on the allegations in the Plaintiffs' Complaint, considered along with the Third Declaration of Leslie R. Weatherhead (ECF No. 69) and the Fifth Declaration of Scott Peck (ECF No. 70), the above criteria have been met. The Complaint alleges Mr. West "directed the activities alleged against him in the State of Washington, including importation of the infringing tires into Washington and sales of the counterfeit and infringing tires in Washington and this judicial district, for delivery in Washington and this district." The e-mails attached to Mr. Weatherhead's declaration (ECF Nos. 69-1 to 69-8) and Mr. Peck's declaration

**ORDER DENYING**
**MOTION TO DISMISS -     9**

1   (ECF No. 70-1) support this allegation, including, in particular, one e-mail from

2   Mr. West to Ryan Lusso of Terex Aerial Work Platforms located in Redmond,

3   Washington, which suggests Mr. West was physically present in Washington

4   during the relevant time:

> Hey we were just out in Redmond and it appears
> the ECN's are not on track for this assembly.  My under-
> standing is we are on track for a May 1 turn on for these.
> Is that still the case?  Product is in the states and more
> coming all the time.  Did you give OTR notice?  I don't
> want to affect supply.  Please let me know and thanks.

(ECF No. 69-5 at p. 23).  In his declaration, Mr. Peck says he has "seen Sam West
in Redmond, Washington at Genie's annual supplier conference at least three
times, including the 2014 Genie supplier conference."[1]  (ECF No. 70 at Paragraph
6).  This evidence, along with the allegations in the Complaint, is sufficient to
establish a *prima facie* showing of personal jurisdiction.[2]

Because there is no dispute that Plaintiffs' causes of action arise from
Defendants', including Mr. West's, contacts with the State of Washington, the
second prong of the specific jurisdiction analysis is satisfied.  It is undisputed that
the alleged infringing tires are imported, promoted, distributed and sold to buyers,
including Genie, in the State of Washington.

---

[1] Genie Industries is a subsidiary of Terex Corporation

[2] A *prima facie* showing means Plaintiffs have produced admissible
evidence which, if believed, would be sufficient to establish the existence of
personal jurisdiction. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements,
Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).  Until an evidentiary hearing or trial on
the merits, the complaint's uncontroverted factual allegations must be accepted as
true; the court will draw "reasonable inferences" from the complaint in favor of
the plaintiff; and any factual conflicts in the parties' declarations must be resolved
in plaintiff's favor. *Id*.

**ORDER DENYING
MOTION TO DISMISS -      10**

1      Because Plaintiffs have satisfied the first two prongs of the specific

2   jurisdiction test, the burden shifts to Defendants to "present a compelling case"

3   that the exercise of jurisdiction would not be reasonable." *Burger King*, 471 U.S.

4   at 477-78.  Seven factors are considered in determining whether the exercise of

5   jurisdiction is reasonable:

> (1) the extent of the defendant's purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*CollegeSource*, 653 F.3d at 1079 (quoting *Dole Food, Inc., v. Watts*, 303 F.3d

1104, 1114 (9th Cir. 2002)).

      Mr. West does not explain why the exercise of personal jurisdiction over

him would be unreasonable.  This court concludes that an exercise of such

jurisdiction is reasonable.  Mr. West is the President of West Worldwide Services,

Inc., and the evidence produced by Plaintiffs thus far indicates his personal

involvement in the importation, promotion, distribution and sale of the alleged

infringing tires to Washington buyers.  His "purposeful injection into

[Washington's] affairs' is significant.  Requiring Mr. West to defend against

Plaintiffs' claims in Washington will not be unduly burdensome for him.  Because

West Worldwide Services, Inc., has been properly summoned to defend itself in

Washington, requiring its President to do the same poses only a slightly

incremental burden.  Requiring Mr. West and West Worldwide Services, Inc., to

defend in the same forum promotes "the most efficient judicial resolution of the

controversy."  Although Plaintiffs are not Washington residents, they have pled

claims under Washington laws.  There is no reason to believe that requiring Mr.

West to defend in Washington would infringe upon the sovereignty of his home

state of Iowa.  Defendant has not suggested that his home state, or any other state,

**ORDER DENYING**
**MOTION TO DISMISS -      11**

would be more a suitable forum.  Accordingly, exercising specific jurisdiction over Mr. West is reasonable.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion To Dismiss Samuel J. West And His Marital Community (ECF No. 49) is **DENIED**.

**IT IS SO ORDERED**.  The District Court Executive is directed to enter this order and forward copies to counsel of record.

**DATED** this __1st__ day of August, 2014.

*s/Lonny R. Suko*

LONNY R. SUKO
Senior United States District Judge

**ORDER DENYING
MOTION TO DISMISS -**          **12**