1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

8  OTR WHEEL ENGINEERING, INC.,      )
   BLACKSTONE/OTR, LLC, and F.B.T.   )
9  ENTERPRISES, INC.,                )
                                     )
10                   Plaintiffs,     )     No. CV-14-085-LRS
                                     )
11      v.                           )     **ORDER RE**
                                     )     **POST-TRIAL MOTIONS**
12                                   )
                                     )
13 WEST WORLDWIDE SERVICES, INC.,    )
   and SAMUEL J. WEST, individually and )
14 his marital community, SSL Holdings, Inc., )
   SSL Global, Inc., SSL China LLC, and )
15 Qingdao STW Tire Co., Ltd.,       )
                                     )
16                   Defendants.     )
   _____ )
17

18    **BEFORE THE COURT** are Plaintiffs' Renewed Motion For Judgment As

19 A Matter Of Law On Fraud Counterclaim And Motion For New Trial On

20 Registered And Unregistered Trademark (ECF No. 547), Defendants' Renewed

21 Motion For Judgment As A Matter Of Law Pursuant To Federal Rule Of Civil

22 Procedure 50 (ECF No. 550), Defendants' Motion To Suspend Or Lift The

23 Preliminary Injunction And For Recovery Of Cash Bond (ECF No. 499), and

24 Plaintiffs' Motion For Permanent Injunction (ECF No. 521).

25    These motions were heard with telephonic oral argument on September 19,

26 2016.  Geana M. Van Dessel, Esq., and Robert J. Carlson, Esq., argued for

27 Plaintiffs (collectively referred to herein as "OTR").  Christine LeBron-Dykeman,

28 Esq., argued for Defendants (collectively referred to herein as "West").

**ORDER RE POST-TRIAL MOTIONS- 1**

**I. BACKGROUND**

Jury trial in this matter commenced on June 20, 2016.  Jury instructions were given on the morning of June 30 and closing argument followed thereafter. The jury was excused to begin deliberations at 2:46 p.m. and at 5:06 p.m., returned with its verdict.  (ECF No. 495).

The jury found by a preponderance of the evidence that OTR's registered trade dress (the '169 Registration) was invalid (functional and/or lacking secondary meaning) and found by clear and convincing that the registration had been procured through fraud.  (ECF No. 496 at p. 1).  The jury also found, however, by a preponderance of the evidence that West had removed the "*Outrigger*" trademark name on Outrigger tires or obscured that trademark name on Outrigger tires, had tortiously interfered with a business relationship between OTR and Genie Industries (Genie), had tortiously interfered with a contract between Solideal and SuperHawk, had tortiously interfered with a business relationship between SuperHawk, Solideal and OTR, and had violated the Washington Consumer Protection Act (CPA).  (ECF No. 496 at p. 2).  The jury awarded OTR $967,015.00 in actual damages.  (*Id*.).[1]

Judgment pursuant to the jury's verdict  was filed on June 30, 2016.  (ECF No. 498).

**II. JMOL AND NEW TRIAL**

**A.  Legal Standards**

A Fed. R. Civ. P. 50(b) motion for judgment as a matter of law is a renewed Rule 50(a) motion.  *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).  To move under Rule 50(a) for judgment as a matter of law, a party

---

[1] The jury found West did not misappropriate any trade secrets from OTR and did not tortiously interfere with a contract between OTR and Genie.  Those verdicts are not the subject of the post-trial motions before the court.

**ORDER RE POST-TRIAL MOTIONS-   2**

must bring the motion before the case is submitted to the jury.  *Id.*  Only after the court has denied or deferred ruling on a Rule 50(a) motion, and a jury subsequently returns a verdict against the moving party, may that party renew its motion by moving under Rule 50(b).  *Id.*

In ruling on a Rule 50 motion, a court must not make credibility determinations or weigh the evidence, and it should draw all inferences in the light most favorable to the nonmoving party.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097 (2000).  The court must also "disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151.  Moreover, deference must be given to the jury's credibility findings consistent with the verdict, *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1468 n. 8 (9th Cir. 1984), and the court "may not substitute its view of the evidence for that of the jury." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001).  The court must then determine whether the evidence permits only one reasonable conclusion and whether that conclusion is contrary to the verdict rendered by the jury.  *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006).

A jury's verdict must be upheld if it is supported by "substantial evidence." *S.E.C. v. Todd*, 642 F.3d 1207, 1215 (9th Cir. 2011).  "Substantial evidence" is evidence sufficient to support the jury's conclusion, "even if it is also possible to draw a contrary conclusion from the same evidence."  *Id.* (quoting *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007)).

Fed. R. Civ. P. 59(a) provides that the court may grant a new trial on all or some of the issues, and to any party, "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  The Ninth Circuit has not specified the grounds on which a new trial may be granted. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).  Instead, "the court is bound by those grounds that have been historically recognized."  *Id.*  Those "grounds include, but are not limited to, claims that the verdict is against the

**ORDER RE POST-TRIAL MOTIONS- 3**

weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the moving party." *Id*.  The standard set forth by the Ninth Circuit is that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Id*.  Thus, "[u]pon the Rule 59 motion of the party against whom a verdict has been returned, the district court has the duty . . . to weigh the evidence [as the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Id*.

## B.  OTR's Renewed Motion For JMOL And For New Trial
### 1.  Fraud Counterclaim

Cancellation of a trademark registration based on fraud requires clear and convincing evidence of:  (1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance by the [Trademark] Examiner on the misrepresentation; and (5) damages proximately caused by that reliance.  *Hotko Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097-98 (9th Cir. 2013).

A trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with intent to deceive the United States Patent and Trademark Office (USPTO).  *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009).  "Subjective intent to deceive, however difficult it may to be prove, is an indispensable element in the analysis. " *Id*.  "[B]ecause direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence . . . [b]ut such evidence must still be clear and convincing, and inferences drawn from lesser evidence

**ORDER RE POST-TRIAL MOTIONS-  4**

cannot satisfy the deceptive intent requirement." *Id*. quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008). When drawing an inference of intent, the "involved conduct, viewed in light of all the evidence . . . must indicate sufficient culpability to require a finding of intent to deceive." *Id*. quoting *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988)(en banc).

### a. Application For '169 Registration

There is not clear and convincing evidence in the record from which the jury could have reasonably concluded that F.B.T. Enterprises, Inc., (F.B.T.), in its application for the '169 Registration, falsely stated to the best of its knowledge that no other person, firm, corporation or association had the right to use the applied-for mark in commerce. Specifically, there is not clear and convincing evidence that F.B.T. failed to disclose in its application the existence of the Galaxy Beefy Baby with subjective intent to deceive the Trademark Examiner that no other entity had the right to use the applied-for mark in commerce.

Fred Taylor testified why he believed the Outrigger tire tread was distinct from the Galaxy Beefy Baby tread. (ECF No. 562 at pp. 720-21; 725). He also testified that no one, including Galaxy, opposed his application for the '169 registration. (*Id*. at p. 722). In light of this, Taylor's testimony that tires used on aerial work platforms (AWPs) before the Outrigger 355 included the Beefy Baby (*Id*. at pp. 589-90) is not significant, even more so considering the other evidence in the record indicating the first use of the Outrigger tread design was in December 1998, and the first appearance of the Beefy Baby in the Tread Design Guide was in the 2002 edition. (ECF No. 592 at p. 16, n. 3). The deposition testimony of Scott Peck and Patrick Smith cited by West (ECF No. 527-1 at 124:23-125:5; ECF No. 527-4 at 189:21-190:2), in which Peck and Smith indicated from photographs shown to them that what was a Galaxy Beefy Baby "appeared" to have the

**ORDER RE POST-TRIAL MOTIONS- 5**

Outrigger tire tread design, is not "clear and convincing" evidence that F.B.T. knew when it applied for registration that Galaxy had the right to use the applied-for mark in commerce.

In sum, there is not clear and convincing evidence that OTR willfully omitted knowledge of a superior right held by Galaxy in the tire tread design that is the subject of the '169 Registration. *Neurovision Med. Products Inc. v. NuVasive, Inc.*, 494 F. App'x 749, 751 (9th Cir. 2012).

### b. Raymond Evans Declaration

Raymond Evans sent an e-mail to OTR's trademark counsel on April 25, 2012 stating in relevant part regarding the Outrigger tire:

> It has a directional tread pattern that is unique from others due to the spacing of the lugs, **the unique angle of the lugs** [as measured to the centerline], and how parallel the edges of the tread lugs are to each other. The slots or voids between the lugs are uniform in width from the centerline of the tire out to the shoulder while most other tires are not.
>
> . . .
>
> All these design elements contribute to the tire's self-cleaning ability that is needed to operate in adverse muddy conditions and also make it readily recognizable as an OTR Outrigger tire.

(West Ex. 526)(Emphasis added).

The latter quoted paragraph was omitted from the declaration Evans submitted five days later to the USPTO. (OTR Ex. 2 at 00058-00061). West contend this shows Evans intended to deceive the USPTO because, as evidenced in his previous e-mail, he believed that all of the design elements of the Outrigger tire, including the unique angle of the lugs, contributed to the tire's self-cleaning ability and therefore, these elements are functional.

This is not clear and convincing evidence that Evans made a false representation regarding a material fact or that he subjectively intended to deceive the USPTO. It is in fact true that the angle of the lugs on R-4 tires, such as the

**ORDER RE POST-TRIAL MOTIONS- 6**

Outrigger, contribute to the self-cleaning ability of the tire.  This is so whether the angle is between 35 and 45 degrees like on the Outrigger tire, or a different degree angle on another R-4 tire.  In general, the angled lug "design element" of an R-4 tire does indeed "contribute" to the self-cleaning ability of the tire.  What Evans did not specifically say in his e-mail was that the particular lug angle of the Outrigger tire made for superior self-cleaning ability of the tire.  He did not say, as West suggest, that this particular lug angle was "needed" for the Outrigger's self-cleaning ability, only that it "contributed" to self-cleaning ability as would the angled lugs on any R-4 tire.  It was not necessary, as argued by West, that Evans include a statement in his declaration that "although all of these design elements are unique, I have confirmed that they provide the very same utilitarian function of self-cleaning as the tread of any other R-4 tires."   Indeed, as discussed below, Patrick Smith had already told this very thing to the Trademark Examiner in a declaration that was filed seven month earlier.  Evans never opined in either his e-mail or his declaration that the specific steep lug angle of the Outrigger was necessary for the self-cleaning ability of the tread on that tire.  And Evans' trial testimony was not to the contrary.  (ECF No. 563 at pp. 938, 941-42).

Because there was no false statement by Evans, it follows there is no evidence he knew or believed his representation to be false and that he intended to deceive the Examiner.   In turn, there could be no actual reliance by the Examiner on a false statement by Evans.  In September 2011, seven months before the Evans declaration was filed, OTR filed a declaration from Patrick Smith acknowledging that use of angled lug bars, which are present on all R-4 tires, serves a self-cleaning function, but arguing the specific angle of the lug does not affect that function.  (OTR Ex. 2 at p. 00122).  By the time the Evans declaration was filed, the Examiner already knew that alternating, interlaced angled lug bars contribute to the self-cleaning ability of an R-4 tire and that OTR was not claiming  their particular angled lug enhanced that ability.

**ORDER RE POST-TRIAL MOTIONS-   7**

### c. Patrick Smith Declaration

Although West did not plead the Patrick Smith declaration as part of their fraud counterclaim, they obviously offered proof of it at trial to which OTR did not object. Accordingly, there is no basis for disregarding this particular fraud allegation on procedural grounds. Fed. R. Civ. P. 15(b)(2)(amendments to conform to the evidence).

West take issue with Smith's statement in Paragraph 12 of his declaration that "[t]he design of OTR's Outrigger tire is so distinctive that R-4 tire manufacturers, distributors and customers can immediately identify the Outrigger tire solely by seeing its tread design." (OTR Ex. 2 at 00128, ¶12). West contend this is a false statement because Smith subsequently acknowledged during his deposition testimony (read into the record at trial) that he had not spoken to any tire manufacturers, distributors and customers.

There is not clear and convincing evidence in the record that the statement in Smith's declaration was a false statement of fact, as opposed to a sincerely held subjective opinion by him based on his knowledge of the tread design of other R-4 tires, as expressed in Paragraphs 7-11 of the same declaration, and based on his experience in the tire industry. (Smith Dep., ECF No. 527-4 at p. 107). Moreover, for the reasons cited in OTR's opening and reply briefs, there is not clear and convincing evidence that the Examiner relied on Smith's declaration to conclude the Outrigger tire tread had acquired distinctiveness (secondary meaning). (See ECF No. 547 at pp. 21-22; ECF No. 592 at pp. 14-15). Indeed, it is hard to fathom that a sophisticated Trademark Examiner would just assume Smith had in fact actually spoken to tire manufacturers, distributors and customers. If the viewpoints of tire manufacturers, distributors and customers had been critical to the Examiner, she would have demanded more proof. The Examiner indicated F.B.T. could, but was not required to, provide "dealer and consumer statements of recognition of the applied-for mark as a trademark." (OTR Ex. 2 at p. 00135). It

**ORDER RE POST-TRIAL MOTIONS- 8**

had to be apparent to her and anyone else that Smith's declaration did not provide such statements.

It is noted that even after Smith submitted this declaration, the Examiner maintained her position that the applied-for mark was non-distinctive. (OTR Ex. 2 at p. 00096). She only changed that position after Smith submitted a second declaration (OTR Ex. 2 at pp. 00056-57) which stated in Paragraph 3:

> Since 1998 when we [began] selling the OUTRIGGER branded tire having the tread design as described and claimed in the present application, we have sold over 37 million dollars of OUTRIGGER tires through our related Blackstone/OTR company and over 11 million dollars of additional sales of OUTRIGGER branded tires having the present tread design as described [and] claimed through our related OTR Wheel Engineering Company. Thus, since we first [began] making and offering our OUTRIGGER branded tire having the present tire tread design, we have had combined sales of such tires in excess of 48 million dollars.

Consistent therewith, the Examiner concluded that "[t]he mark has become distinctive of the goods and/or services through the applicant's substantially exclusive and continuous use in commerce for at least five years immediately before the date of this statement." (OTR Ex. 2 at p. 0024).[2]

### d. Conclusion

Based on a "clear and convincing" standard, the evidence of record permits only one reasonable conclusion: OTR did not procure their '169 Registration by

---

[2] The Examiner's determination also followed her receipt of the Evans declaration attesting to the distinctive nature of the Outrigger tire tread design based on his "50 years of experience in the engineering, manufacturing, marketing and sales of tires" and his opinion, consistent with the opinion expressed in Smith's first declaration, that "[t]he OUTRIGGER tread design is immediately recognizable from 30 feet, whether it be on a construction site, on an equipment dealer's lot, or on a trailer transporting equipment from the plant of manufacture to a customer." (OTR Ex. 2 at p. 00061).

**ORDER RE POST-TRIAL MOTIONS- 9**

fraud on the USPTO.  There is not "substantial evidence" to support the jury's verdict to the contrary.

## 2. New Trial

Although there is not clear and convincing evidence to support the jury's verdict that OTR committed fraud in procuring the '169 Registration, a preponderance of the evidence supports the jury's finding that OTR's Outrigger tire tread design trade dress is functional and/or lacks secondary meaning and therefore, is invalid.  The jury was not bound by the registration and the presumptions of functionality and secondary meaning that accompanied it.  The court is not persuaded that West's fraud claim tainted the jury's verdict on the validity of OTR's registered trade dress.[3]   Furthermore, the court is not persuaded that the alleged instances of misconduct by West's counsel during trial somehow tainted the jury's deliberations on the validity of OTR's registered trade dress.  Finally, the court is not persuaded that it made evidentiary errors that led to the jury's verdict finding the registered trade dress invalid.

### a.  Gray Tire Trade Dress Registration

There was no need for West's counsel to mention in opening argument that OTR's gray tire registration had already been found invalid.  Nevertheless, the court cannot conclude that it tainted the jury's deliberations which occurred after presentation of eight days of evidence and closing argument in which there was no

---

[3] Question No. 1 on the Special Verdict Form was whether the jury found by a preponderance of the evidence that the '169 registered trade dress was valid (non-functional and has secondary meaning).  Only if it answered that question "No" was the jury to go on to Question No. 2 and determine if there was clear and convincing evidence that the registration had been procured by fraud.  (ECF No. 496).

**ORDER RE POST-TRIAL MOTIONS-   10**

1    further reference to the gray tire registration due to the court having granted

2    OTR's oral motion in limine outside the presence of the jury after opening

3    argument had concluded.  Furthermore, the jury was instructed in preliminary and

4    final instructions that argument of counsel was not to be considered as evidence.[4]

5

6    **b.  Non-Existence Of Other Tire Tread Trade Dress Registrations**

7        OTR contend West's counsel knowingly misled the jury by telling it that no

8    other tire tread trademarks had ever been issued by the USPTO when they knew

9    this to be false.  OTR contend this court made an evidentiary error by not allowing

10   them to introduce into evidence their proposed Exs. 326, 327 and 328 to rebut the

11   statement that no other tire tread trademarks had ever been issued by the USPTO.

12       While it is a technical argument, West's counsel accurately points out that

13   what OTR proposed to show the jury in Ex. 326 (Pirelli Registration dated July 10,

14   2007) is a **product packaging** trade dress registration on the Principal Register

15   which did not require a showing of secondary meaning, as opposed to a **product**

16   **design (configuration)** trade dress registration, like the '169 Registration, which

17   requires such a showing in order to be on the Principal Register.  The Pirelli

18   Registration shows a single line, not a complete tire tread, and this trade dress is

19   not only for pneumatic and semi-pneumatic tires, but also for "wheels for vehicles

20   of all types; inner tubes, rims, parts and spare parts for vehicle wheels of all

21   types."  (ECF No. 548-5)

22       And while the two other proposed exhibits (Exs. 327 and 328, ECF Nos.

23   548-6 and 548-7) are **product design (configuration)** tire tread trade dresses, they

24   are on the Supplemental Register, rather than the Principal Register, and therefore,

25   _____

26       [4] OTR's counsel did not ask for a corrective instruction regarding the gray

27   tire registration.  The court assumes that is because they did not want to bring any

28   additional attention to the matter.

**ORDER RE POST-TRIAL MOTIONS-   11**

found to currently be lacking secondary meaning, a defining feature of a valid trade dress.  None of OTR's experts who testified at trial were able to point to a single example of a **product design (configuration)** tire tread trade dress on the Principal Register.  Even OTR acknowledges that the Trademark Examiner, in considering OTR's application for the '169 Registration, "performed a search for similar registered or pending marks, and found none."  (ECF No. 547 at p. 9).  At the time the Examiner performed that search (March 2011), the Pirelli Registration in OTR's Ex. 326 was already on the Principal Register (since July 2007).  The tire tread trade dresses in OTR's Exs. 327 and 328 were placed on the Supplemental Register in September 2011, and therefore it seems likely the applications for those trade dresses would have been "pending" in March 2011 when the Examiner performed her search.

West's counsel did not make a deliberate misrepresentation to the jury regarding the non-existence of other tire tread trade dress registrations, and this court did not abuse its discretion in refusing presentation of  Exs. 326, 327 and 328 to the jury on the basis that their probative value was outweighed by their potential to confuse the issues and mislead the jury.  Fed. R. Evid. 403.  Presentation of those exhibits would have required additional complicated jury instructions regarding the distinction between product packaging trade dress registrations and product design (configuration) registrations, and the distinction between the Principal and Supplemental Registers and the significance thereof.  Furthermore, there was sufficient  evidence of record (other than the non-existence of other tire tread dress registrations on the Principal Register) to support the jury's conclusion that OTR's tire tread trade dress is functional and/or lacks secondary meaning.

///

///

///

**ORDER RE POST-TRIAL MOTIONS-   12**

### c. Ownership Of '169 Registration

OTR allege West's counsel misled the jury about OTR's ownership of the '169 Registration (tire tread trade dress), but the statement cited by OTR (ECF No. 547 at p. 29) pertains to ownership of the '934 Registration (the "*Outrigger*" word mark). OTR prevailed on the false designation of origin claim related to that registration. Accordingly, the court fails to see how the jury's verdict on the validity of the trade dress could have been tainted by this statement.

### d. Mold Purchases

OTR allege that during closing argument, West's counsel made a false representation to the jury about the date of West's mold purchases, indicating they occurred in May 2012 per OTR's Ex. 237, when in fact that exhibit was an invoice for the purchase of tires and the evidence showed West's first purchase of molds did not occur until December 2012 at the earliest.

Any mischaracterization about Ex. 237 by West's counsel during closing was addressed by OTR's counsel during rebuttal in which he pointed out that Ex. 237 was a tire purchase, not a molds purchase. (ECF No. 570 at pp.1827-28). Moreover, the issue about the molds pertains to OTR's false designation of origin claim regarding West's test (development) tires, a claim on which OTR prevailed. Accordingly, the court fails to see how the jury's verdict on the validity of the trade dress could have been tainted by the representation made by West's counsel regarding mold purchases.

### e. Ohnishi Patent

The court did not err in allowing West's counsel to use a very limited portion of the Ohnishi Patent (West Ex. 559) as a demonstrative exhibit during his direct examination of West's expert, Richard Pendino. The exhibit was not

**ORDER RE POST-TRIAL MOTIONS-   13**

admitted into evidence and did not go to the jury room.[5]   The cross-examination of Pendino conducted by OTR's counsel persuades that there was no unfair prejudice to OTR, confusion of issues, or that the jury was misled by Ex. 559.  On cross-examination, Pendino acknowledged the Ohnishi Patent involved "a typical R-4 tread pattern" and responded "no" when asked whether the teachings of the patent applied "specifically to the heightened tread angle, the sharper tread angle, of the OTR production tire."  (ECF No. 569 at pp. 1610-11).  The jury understood the point of counsel's cross-examination was intended to establish that the Ohnishi patent was not determinative of whether the sharper tread angle of the OTR production tire had a specific utilitarian purpose (was essential to the functioning of the tire) beyond the general utilitarian purpose of all R-4 tire tread designs.[6]

### f. Conclusion

The jury's verdict finding that OTR's registered tire tread trade dress is invalid is not "contrary to the clear weight of the evidence," is not "based upon false or perjurious evidence," and a new trial is unnecessary to prevent "a miscarriage of justice."  It is also noted that all of the arguments OTR makes in support of a new trial pertain to the issue of functionality.  Even if OTR's registered tire tread trade is non-functional, it would still be invalid if it lacks secondary meaning.

_____

[5] There is no doubt that the existence of utility patents is potentially relevant to the issue of "functionality."  *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 121 S.Ct. 1255 (2001).  This court balanced the probative value of the Ohnishi patent with it potential for unfair prejudice, confusion of the issues, and misleading the jury.  Fed. R. Evid. 403.

[6] In a subsequent colloquy with the court outside the presence of the jury, OTR's counsel stated: "I believe we did cross-examine on that patent in an appropriate way.  The jury understands."  (ECF No. 569 at p. 1667).

**ORDER RE POST-TRIAL MOTIONS-   14**

### 3.  Unregistered Trade Dress

Because OTR will not receive a new trial on its registered trade dress claim, this court need not reconsider whether it erred in precluding OTR from presenting an unregistered trade dress claim at trial.  (ECF No. 442).  Nevertheless, as this is an important issue, the court will elaborate further upon its reasoning in precluding an unregistered trade dress claim and why it perceives there to be no prejudice to OTR.

OTR's Amended Complaint (ECF No. 179), filed July 20, 2015, is titled "First Amended Complaint For **Registered Trade Dress** And Trademark Infringement, Unfair Competition, Trade Secret Misappropriation, Tortious Interference With Business Relations, Deceptive Trade Practices, And Unjust Enrichment." (Emphasis added).  Paragraph 27 alleges that "[t]he *Outrigger* tire has its distinctive proprietary *Outrigger* Trade Dress **which is the tread design on the contact surface of the tire**, as seen in this photograph and drawing[.]" (Emphasis added). Two images are depicted, one being the "Image of *Outrigger* design on actual tire" and the other being the "Image from USPTO trade dress registration 4, 220,169."  Paragraph 32 alleges "[t]he *Outrigger* Trade Dress is the subject of U.S. Trademark Registration No. 4,220,169, which issued to the principal register on October 9, 2012" and "[t]he *Outrigger* Trade Dress '169 Registration is entitled to a priority date of first use back to at least as early as 1998."  Paragraph 36 alleges "[t]he '169 Registration for the *Outrigger* Trade Dress enjoys statutory presumptions of non-functionality, acquired distinctiveness, validity, ownership and the exclusive right to use the *Outrigger* Trade Dress in conjunction with the goods identified in the '169 Registration."  Paragraph 46 also equates the trade dress with the '169 Registration ("the *Outrigger* Trade Dress that is the subject of the '169 Registration"; "infringement of the '169 Registration covering the *Outrigger* Trade Dress").  Count I of the Amended Complaint for "Federal Trademark Counterfeiting And Infringement (15 U.S.C. §§ 1114,

**ORDER RE POST-TRIAL MOTIONS-    15**

1116(d), and 1125(a))" does not specifically allege an unregistered trade dress claim.  To the contrary, Paragraph 72 of Count I re-alleges that "[t]he *Outrigger* Trade Dress is a federally registered trademark."  None of the other counts of the Amended Complaint specifically allege an unregistered trade dress claim.

The reports submitted by OTR's experts treated OTR's trade dress as what is set forth in the '169 registration.  (i.e., ECF No. 195-3, Report of Antonio Sarabia) and none of the summary judgment materials filed by either OTR or West hinted at the existence of a separate unregistered trade dress claim.  The court's summary judgment orders reflected that understanding (i.e., ECF No. 314).  The proposed Joint Pretrial Order (ECF No. 366) filed on December 23, 2015, in anticipation of a January 7, 2016 pre-trial conference that was vacated, did not specifically set forth an unregistered trade dress claim under the Lanham Act and treated OTR's trade dress as that set forth in the '169 registration to which presumptions of non-functionality and secondary meaning applied.  (ECF No. 366 at p. 3, Lines 10-15; pp. 8-9 at Paragraphs 8-16; p. 24 at Paragraphs 4-9; p. 25 at Paragraphs 17-19; p. 39 at Paragraph 2).  It was not until the parties filed a proposed Joint Amended Pre-Trial Order on May 17, 2016, in anticipation of the re-scheduled trial date of June 20, that there was any indication OTR intended to pursue an unregistered trade dress claim pursuant to 15 U.S.C. §1125(a) (in addition to its §1125(a) false designation of origin claim regarding the *Outrigger*

///
///
///
///
///
///
///
///

**ORDER RE POST-TRIAL MOTIONS-   16**

trademark name). (ECF No. 410 at p. 8, Paragraph 12; p. 35 at Paragraph 5).[7]  In their proposed jury instructions filed on June 1, 2016 (ECF No. 418), OTR also set forth its unregistered trade dress claim.  This was the subject of discussion at the June 6 pre-trial conference and then again at the June 17 pre-trial conference before this court issued its order precluding such a claim.

This court never recognized the existence of an unregistered trade dress claim in any order.  The "Order Re Motion To Dismiss" filed on November 30, 2015, recognized that Plaintiffs Blackstone/OTR, LLC (Blackstone) and OTR Wheel Engineering, Inc. (OTR Wheel), as non-owners of the '169 registration, but as parties with a commercial interest in the registration, had standing to pursue claims regarding the registered trade dress pursuant to §1125(a), whereas Plaintiff F.B.T., as the owner, could proceed pursuant to §1114.  (ECF No. 316 at pp. 2-5).  In doing that, the court did state OTR Wheel was limited to pursuing "remedies available under 15 U.S.C. §1125(a) of the Lanham Act (false designation of origin) for alleged infringement of a non-registered common law mark."  (ECF No. 316 at p. 4).  This was a mistake and the court intended no more than to say that OTR Wheel, as a non-owner of the registered mark, did not have standing to pursue remedies under 15 U.S.C. §1114(1) and §1116(d) as to the registered mark,

_____

[7]  West's contention at Paragraph 3 of Page 17 of the Amended Pre-Trial Order did not explicitly acknowledge the existence of an unregistered trade dress claim.  It asserted that OTR Wheel and Blackstone, because they were not owners of the registered trade dress, had the burden of proving by a preponderance of evidence that  the trade dress is non-functional and had acquired secondary meaning because the statutory presumptions accompanying registration did not apply.  This court disagreed with that assertion, finding the presumption arises from the registration, regardless of who has standing to assert an interest in the registered mark and therefore, it was appropriate to treat the Plaintiffs as a collective entity ("OTR") regarding the registered trade dress infringement claim.

**ORDER RE POST-TRIAL MOTIONS-   17**

but did have standing under §1125(a).  And in any event, this court obviously could not *sua sponte* create a claim that had not already been pled in the Amended Complaint, as discussed above.   The only §1125(a) claim specifically pled in the Amended Complaint was for false designation of origin concerning the development tires West submitted to Genie for testing, but that claim did not concern the trade dress and instead, concerned the "*Outrigger*" trademark name. And this is all that the court recognized in its January 20, 2016 "Order Granting Motion For Reconsideration Re Word Mark and Pre-Suit Damages" (ECF No. 381 at pp. 2-4).  In n. 3 at p. 5, the court reiterated what it had stated previously regarding OTR's trade dress infringement claims: "Plaintiffs are suing on a **registered mark** under both 15 U.S.C. §1114 and §1125(a)."  (Emphasis added).

OTR say the court's ruling confined the scope of their unregistered trade dress rights to the subject matter of the '169 registration and thus "foreclosed [OTR] from presenting a claim to infringement of trade dress in the sense of the Outrigger tire's overall product appearance, and as a result, all of the evidence Plaintiffs developed related solely to 'trademark.'"

Ninth Circuit Model Jury Instruction 15.7 concerns presumed validity and ownership of a registered trademark.  The "Comment" section of that instruction recognizes the existence of a registered trade dress claim and that it is appropriate to refer to it in the instructions as "registered trade dress:"

> Modify this instruction as necessary in any case involving service marks, **trade dress**, collective trade or service marks, or certification trade or service marks, by inserting such terms **in lieu of the word "trademark"** in this section.

(Emphasis added).

That is precisely what this court did in its Instruction No. 13 (ECF No. 500) which it gave to the jury.  Instruction No. 13 followed this court's Instruction No. 12 which recited the elements OTR needed to prove by a preponderance of evidence regarding their claim for infringement of registered trade dress. Instruction No. 8, defining "Trade Dress" (based on Ninth Circuit Model Jury

**ORDER RE POST-TRIAL MOTIONS- 18**

Instruction 15.2), told the jury that "[t]rade dress is the product's **total image and overall appearance**," and Instruction No. 16 told the jury that "OTR may own the trade dress in the **total image and overall appearance** of the products sold by OTR even though the tires are manufactured by someone else."[8]

In sum, the Ninth Circuit jury instructions recognize there is such a thing as "registered trade dress" and the instructions given to the jury did not foreclose OTR from presenting a claim to infringement of trade dress in the sense of the Outrigger tire's overall product appearance.[9]

Furthermore, OTR fail to indicate what would be included in their unregistered trade dress that was not already included in their registered trade

///
///
///
///

---

[8] In his closing argument to the jury, counsel for OTR referred to the court's instructions and further clarified use of the terms "trademark" and "trade dress:"

> "[L]et's start with the concept of trade dress. We've heard a lot about trademark during the course of the presentation of this case; and, as the Court has just instructed you, **one form of a trademark is – trade dress, which is overall look, appearance**. I think I said in opening that trademarks can take different forms. They can be a word mark. . . . They can be a design like the one that we have here.

(ECF No. 570 at p. 1741)(Emphasis added).

[9] Indeed, the preliminary injunction entered by this court (and as modified by the court of appeals) refers to "registered trade dress." (ECF Nos. 46 and 130).

**ORDER RE POST-TRIAL MOTIONS-    19**

dress.[10]  OTR expressly disavowed features of the tire other than the tread as constituting part of the trade dress: "There are other **functional** differences that are not covered by the trade dress registration, including the low profile of the tire, the verticality of the sidewall that sits on top of the rim without curvature, the flatness of the tread face" (ECF No. 255 at Paragraph 125)(Emphasis added).  If something is "functional," it is not part of a valid trade dress, registered or unregistered.[11]

Finally, because the registered trade dress was found invalid as functional and/or lacking secondary meaning, any unregistered trade dress based on the same features as the registered trade dress would also be invalid, particularly so considering there are no presumptions of validity which attach to unregistered trade dress, unlike registered trade dress.

The court did not err in precluding OTR from presenting an unregistered trade dress claim to the jury.

## C.  West's Renewed Motion For  JMOL

---

[10]  The registered mark "consists of an offroad tire tread design having alternating interlaced lug bars in which the lug bars are formed from the sidewalls of the tire to the center bar of the tire at an angle from the tire sidewall, the angle being between 35 and 45 degrees, and which lug bars terminate towards the center bar of the tire with a lug bar section that is substantially perpendicular to the sidewall of the tire." (OTR Ex. 2 at p. 00006).  Fred Taylor testified that this mark was not limited to the angle and included "the perpendicular sidewall to the angle of the tread." (ECF No. 562 at pp. 600-01).

[11]  Nonetheless, the jury did hear from Fred Taylor what he considered to be all of the unique aspects of the Outrigger tire distinguishing it from other R-4 tires, including the straight sidewall and the flatness of the tire.  (ECF No. 562 at pp. 604-05).

**ORDER RE POST-TRIAL MOTIONS-   20**

**1. False Designation Of Origin (Lanham Act, 15 U.S.C. §1125(a))**

There is "substantial evidence" in the record from which the jury could have reasonably concluded that West engaged in "reverse passing off" in violation of §1125(a). The jury could have reasonably concluded from the e-mail exchange between Michael Zhang and Sam West that a Solideal Outrigger mold using "blank spring plates" to cover up the "*Outrigger*" trademark name and other identifying information was used to produce the blank development tire that West submitted to Genie for testing.[12]

Citing certain testimony of OTR's expert, Jerry Leyden, West assert their development tire "was fundamentally different from the original product" and "there was no evidence that Defendants took a genuine Outrigger tire and altered that tire in any fashion." According to West, "there was no evidence proffered by Plaintiffs to show that they are the 'origin' of Defendants' test tires" and instead, "the record evidence is that . . . Defendants simply went to the same Chinese manufacturer [SuperHawk] to have their tires made and that Defendants' tires are structurally entirely different from the Outrigger."

Leyden performed a "stepdown" analysis of two tires. He testified that one of the tires was a genuine "*Outrigger*" branded tire made in Thailand (although OTR indicate it was actually Sri Lanka). The other tire was an "unmarked tire originating from the Sam West organization made in China" at the SuperHawk

---

[12]  The fact OTR did not produce an altered mold at trial or a genuine Outrigger tire made in China does not detract from the "substantial evidence" supporting the jury's verdict. In closing, West pointed out that no altered mold had been produced and that there was no sample of an Outrigger tire made in China (ECF No. 570 at p. 1794 and p. 1813), but this did not sway the jury. In rebuttal, OTR contended they did not possess any of the molds in question. (ECF No. 570 at p. 1829).

**ORDER RE POST-TRIAL MOTIONS-  21**

plant. (ECF No. 563 at p. 897-98).[13]  Leyden testified there were structural differences between these tires, but said he was not surprised by this because manufacturing varies from country to country and company to company.  (*Id*. at 899).  The point he sought to make is the structural differences between the two tires does not necessarily mean the development tire that West submitted to Genie could not have been a genuine Outrigger tire manufactured in China.  The jury apparently found Leyden to be credible on this point.

West counters that OTR is the only party with access to a Chinese-made Outrigger tire and yet they chose to have Leyden "compare a Sri Lankan-made Outrigger with West's development tire" and as such, cannot now object to the relevancy of their expert's testimony.  West assert "[t]he only evidence before the jury was that the West tire is structurally different than the Outrigger."  To the contrary, there was other evidence (testimony from Leyden and Taylor) that genuine Outrigger tires are manufactured in different countries by different companies.  Therefore, the jury could have reasonably concluded that this explained the difference between the "development tire" and the Outrigger tire tested by Leyden so as not to preclude a determination that the development tires submitted by West to Genie for testing were in fact genuine Outrigger tires made from a Solideal Outrigger mold with the Outrigger information having been removed by the use of "blank spring plates."  There is "substantial evidence" in the record that Outrigger is the "origin" of the development tires West submitted to Genie for testing, and that the development tires were an altered genuine

///

///

---

[13]  It is not clear that this particular unmarked tire was in fact one of the development tires West actually submitted to Genie for testing.  In his testimony, Leyden never used the term "development" tire.  It appears all he knew was that he was supplied with an "unmarked" tire originating from West.

**ORDER RE POST-TRIAL MOTIONS-   22**

Outrigger product.[14]  Whether or not there was a breach of the non-competition agreement between SuperHawk and Solideal was not essential to the jury's finding that West falsely designated the origin of the development tires submitted to Genie for testing.

It logically follows that the jury could have reasonably concluded there was a likelihood that a customer would be confused as to the true source of the development tires, particularly when all the customer saw was a tread that was identical to the Outrigger tread and could not see the internal make-up of the tire. "The right question . . . is whether the consumer knows who produced the finished product." *Bretford Mfg., Inc. v. Smith Sys. Mf. Co.*, 419 F.3d 576, 581 (7th Cir. 2005).

### 2.  Tortious Interference And CPA

The "substantial evidence" supporting the jury's conclusion that there was an intentional removal of the "*Outrigger*" trademark name and other Outrigger identifying information from the test tires also allowed the jury to reasonably conclude there was tortious interference with a business relationship between OTR and Genie, tortious interference with a contract between Solideal and SuperHawk, and tortious interference with a business relationship between SuperHawk and Solideal and OTR.[15]  In turn, these verdicts allowed the jury to reasonably

///

///

---

[14] Because the development tires were a genuine Outrigger product, *Dastar Corp. v. 20th Century Fox Film Corp.*, 539 U.S. 23, 123 S.Ct. 2041 (2003), does not preclude a finding of "false designation."

[15]  Indeed, one can only speculate if the tortious interference verdicts were premised on some distinct independent acts of unfair competition by West (i.e., inducing a breach of Solideal-SuperHawk agreement).

**ORDER RE POST-TRIAL MOTIONS-   23**

conclude  West had engaged in an "unfair or deceptive act or practice" in violation of the CPA.[16]

The legal arguments West now make regarding the tortious interference and CPA claims- i.e., OTR is not a third-party beneficiary to any Solideal/Superhawk agreement- were not raised prior to submission of those claims to the jury and therefore, are procedurally barred from being raised now.  A party cannot "raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).  The purpose of this rule has two purposes: 1) it preserves the sufficiency of the evidence as a question of law, allowing the district court to review its initial denial of judgment as a matter of law instead of forcing it to engage in an impermissible examination of facts found by the jury; and 2) it brings to the court's and the parties' attention any alleged deficiencies in the evidence at a time when the opposing party still has an opportunity to correct them. *Id*.

That the tortious interference claims are "intimately related to the other claims" does not give West a pass on earlier raising issues at trial which are unique to the tortious interference claims.  West suggest they were rushed by the court and so did not make the particular legal arguments they are making now regarding the tortious interference claims.  This is not an adequate excuse.

---

[16] The manner in which the Special Verdict Form was structured required the jury to find West either infringed OTR's registered trade dress, misappropriated OTR's trade secrets, falsely designated the origin of the test tires West submitted to Genie for testing, or tortiously interfered with contracts and/or business relationships, in order for it to find a violation of the CPA.  (See language following Question No. 10, ECF No. 496 at p. 2).  Therefore, the CPA verdict in favor of OTR was not premised on some independent tortious act that was not pled in OTR' Amended Complaint.

**ORDER RE POST-TRIAL MOTIONS-   24**

It is true that West took exception to the court's Instruction Nos. 32 and 35 on the basis that OTR were not an intended beneficiary of any contract between Solideal and SuperHawk. (ECF No. 569 at p. 1723). Instruction No. 32 sets forth the elements of the claim of interference with a contract between Solideal and SuperHawk. Instruction No. 35 concerns interference with a business relationship between SuperHawk, Solideal and OTR. This too is not enough to excuse West's failure to bring up and elaborate in detail on this issue in their motion for directed verdict made just a few minutes earlier on the same day (June 29).[17] West had known for a considerable amount of time what OTR proposed as jury instructions regarding the tortious interference claims. Furthermore, the intended beneficiary argument is only one of the several detailed legal arguments now presented by West regarding the tortious interference and CPA claims.[18]

---

[17] West made a motion for directed verdict at the close of OTR's case on June 24, and then again at the close of the evidence on June 29. On June 24, there was no mention whatsoever of the tortious interference and CPA claims. On June 29, there was only a passing and summary reference: "[W]e believe that . . . unfair competition of the Washington Consumer Protection Act and interference relate directly to these [alleged misappropriation of trade secrets and alleged trade dress infringement] so they are interdependent with the trade dress and trade secret claims." (ECF No. 569 at p. 1686).

[18] The fact OTR prevailed on their false designation of origin claim under the Lanham Act is sufficient by itself to justify the damages awarded to OTR by the jury. OTR sought a single recovery of damages (lost profits and shipping costs) pursuant to one or more of the causes of action pled in their Amended Complaint.

**ORDER RE POST-TRIAL MOTIONS- 25**

**III. PRELIMINARY INJUNCTION**

West were not wrongfully enjoined by virtue of the preliminary injunction entered against them, notwithstanding that the jury found OTR's registered trade dress invalid and found that West did not misappropriate any OTR trade secrets. The jury also found West culpable of false designation of origin under the Lanham Act in that they provided Genie with test tires from which the "*Outrigger*" trademark had been removed and passed those tires off as their own.  It is this act of unfair competition which resulted in Genie deciding to purchase West's "Extremelift" production tires.  The jury awarded OTR $967,015 in damages representing the profits OTR lost since they were unable to sell their Outrigger tires to Genie because Genie bought West's production tires instead.[19] Accordingly, it was appropriate for this court to preliminarily enjoin West from selling any production tires pending trial and resolution of whether West's production tires misappropriated OTR trade secrets and infringed OTR's registered trade dress.

A separate and distinct question is whether West should continue to be enjoined pending what the court presumes will be an appeal by OTR to the Ninth Circuit Court of Appeals.  Fed. R. Civ. P. 62(c) provides in relevant part:

> While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

In determining whether to stay an injunction pending appeal, the court considers the following factors: 1) whether the movant for suspension has shown a substantial likelihood of prevailing on the merits; 2) whether the movant will be irreparably harmed absent a stay; 3) whether issuance of a stay will substantially
///

---

[19] "Extremelift" production tires were sold by West to Genie for one year beginning in May 2013 until the preliminary injunction was entered in May 2014.

**ORDER RE POST-TRIAL MOTIONS-   26**

injure other parties to the appeal; and (4) the public interest.  *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113 (1987).[20]

The court believes West have a substantial likelihood of prevailing on appeal regarding a challenge to the jury's finding that OTR's registered trade dress is invalid.  It also believes West have a substantial likelihood of prevailing on appeal regarding any challenge to the jury's finding that any OTR trade secrets were not misappropriated by West.  Those verdicts are supported by "substantial evidence."

West assert they will be substantially harmed if the injunction is not lifted.  According to West, the "$1,800,000 [preliminary injunction bond in place since May 2014] is already woefully insufficient to make Defendants whole" and "[k]eeping the injunction in place for another year or more during the pendency of an appeal would cause substantial harm to Defendants."  West note that when the bond was set, trial was originally scheduled for August 2015, and was continued twice thereafter, to January 2016, and then to June 2016.[21]  As discussed below, the court will increase the bond to an appropriate amount in order to avoid any irreparable harm to West.

The court concludes OTR will be substantially harmed if the preliminary injunction is lifted pending appeal.  If the injunction were lifted, West would have

---

[20]  Fed. R. App. P. 8(a)(1)(C) requires a party first move in the district court for "an order suspending, modifying, restoring, or granting an injunction while an appeal is pending."  After the district court has ruled, they parties can file a motion for relief in the court of appeals pursuant to Fed. R. App. P. 8(a)(2).

[21]  West claim their lost profits far exceed the $1.8 million bond.  They say they have lost $1,483,801 in being unable to sell their Extremelift-branded 355 tires to Genie for Genie's S-60 machinery and "have lost the opportunity to sell tires for the Z-60 machines to Genie, an entire business unit that was scheduled to be transferred to Defendants from Plaintiffs in early 2014."

**ORDER RE POST-TRIAL MOTIONS-   27**

free reign to sell their "Extremelift" tires to Genie and any other customer.  If the injunction were lifted and the Ninth Circuit concludes on appeal that there should be a re-trial on the issue of the validity of OTR's registered trade dress (and/or a trial on unregistered trade dress) and whether it is infringed by West's "Extremelift" tire, OTR will have to offer evidence of all of West's sales during the pendency of the appeal and seek additional lost profits based on those sales.  This would be burdensome and is avoided by maintaining the preliminary injunction pending appeal.

One of the goals of the Lanham Act is protecting the public interest in fair competition in the market.  Maintaining the preliminary injunction ensures there is no unfair competition pending the Ninth Circuit's determination whether to uphold the jury's verdict finding OTR's registered trade dress invalid.

When this court entered the preliminary injunction in May 2014, it set the bond at $1.8 million based on the representation of OTR's counsel that West stood to lose approximately $150,000 per month by being enjoined from selling their tire, and based on the assumption that trial would not occur for at least 12 months.  (ECF No. 46 at p. 10).  It has now been approximately 28 months since the preliminary injunction was entered.  Taking into account that West currently owe OTR nearly $1 million because of the verdict for OTR on the false designation of origin claim, the court will increase the injunction bond by $1.2 million to $3 million.  The additional bond will need to be posted by OTR when they file their Notice of Appeal.

## IV.  PERMANENT INJUNCTION

For a permanent injunction to be issued, OTR must demonstrate: (1) they have suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the parties, a remedy in equity is

**ORDER RE POST-TRIAL MOTIONS-    28**

warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92, 126 S.Ct. 1837 (2006).

It appears OTR has thus far been made whole by the actual damages awarded to them by the jury representing profits lost after Genie chose West to supply size 355 tires for Genie's AWPs. West supplied those tires for an approximate one year period (May 2013 to May 2014) before they were enjoined from doing so by this court. OTR contend, however, that because "the West Defendants have expressed an unambiguous intention to resume efforts to sell tires sourced through West's tortious activities, not only to Genie but to others," their "future conduct will cause irreparable injury to OTR unless the court prevents it."

As indicated above, the preliminary injunction will be maintained during the pendency of what the court presumes will be an appeal by OTR and likely by West, as well. Accordingly, it is unnecessary to rule on a permanent injunction at this time. Moreover, it would be premature to do so until appeals are concluded since the disposition of those could well have some bearing on if and when a permanent injunction is warranted.[22]

## V. CONCLUSION

Plaintiffs' Renewed Motion For Judgment As A Matter Of Law On Fraud Counterclaim And Motion For New Trial On Registered And Unregistered Trademark (ECF No. 547) is **GRANTED in part** and **DENIED** in part. The

---

[22] In support of their motion for permanent injunction, OTR rely on the false designation of origin verdict and the tortious interference verdicts. Although the court cannot consider the legal arguments West make regarding the tortious interference verdicts in determining whether those verdicts should be overturned as a matter of law, it can and will consider those arguments in determining whether it should award a permanent injunction to OTR.

**ORDER RE POST-TRIAL MOTIONS-   29**

Renewed Motion For Judgment As A Matter of Law is **GRANTED** and Plaintiffs are awarded Judgment against Defendants on their Fraud Counterclaim (Fourth Cause of Action, ECF No. 277 at pp. 28-32). The Motion For New Trial On Registered And Unregistered Trademark is **DENIED**.

Defendants' Renewed Motion For Judgment As A Matter Of Law Pursuant To Federal Rule Of Civil Procedure 50 (ECF No. 550) is **DENIED**.

Defendants' Motion To Suspend Or Lift The Preliminary Injunction And For Recovery Of Cash Bond (ECF No. 499) is **DENIED at this time, without prejudice**.

Plaintiffs' Motion For Permanent Injunction (ECF No. 521) is **DENIED at this time, without prejudice**.

The court is presuming there will be appeals by both OTR and West. It is the court's understanding that pursuant to Fed. R. App. P. 4(A), the time for the filing of these appeals will commence with the entry of this order disposing of the renewed motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) and the motion for new trial pursuant to Fed. R. Civ. P. 59. **Upon filing of their Notice of Appeal, Plaintiffs will post an additional bond of $1.2 million as security for the preliminary injunction which remains in place.** This is in addition to the $1.8 million bond already posted by Plaintiffs.

The pending Motions For Attorney Fees (ECF Nos. 507 and 513)[23] do not toll the running of the appeal period absent an order from the court extending the time to appeal under Fed. R. Civ. P. 58(e). A stay of those motions pending appeal (as well as a stay of Plaintiffs' Motion To Amend Judgment To Include Interest (ECF No. 504), Plaintiffs' Motion For Court Instruction Re Submission Of Attorney Invoices (ECF No. 533), and a stay of the taxation of costs (ECF Nos.

---

[23] In light of the court's granting of Plaintiffs' Renewed Motion For JMOL on Defendants' Fraud Counterclaim, Defendants' Motion (ECF No. 507) is moot to the extent it seeks damages pursuant to 15 U.S.C. §1120.

**ORDER RE POST-TRIAL MOTIONS-    30**

505 and 512)) may be appropriate pending appeal of the court's Judgment. The court will consider a stay upon a motion filed by one or more of the parties. In the absence of a motion, the court will proceed to determine Plaintiffs' Motion To Amend Judgment To Include Interest (ECF No. 504) on which briefing is completed and **DIRECTS** that the parties serve and file responses to each other's Motions For Attorney Fees (ECF Nos. 507 and 513), limited to the issue of entitlement to fees (see ECF No. 554), within fourteen (14) days of the date of this order, with replies to be served and filed no later than seven (7) days after receipt of the responses. Upon completion of the briefing, those motions will be considered at issue without oral argument. Likewise, objections to costs (ECF Nos. 505 and 512) shall be served and filed within fourteen (14) days of the date of this order.

      **IT IS SO ORDERED.** The District Court Executive is directed to enter this order and provide copies to counsel of record.

      **DATED** this   5th   day of October, 2016.


                            ***s/Lonny R. Suko***
                            LONNY R. SUKO
                 Senior United States District Judge

**ORDER RE POST-TRIAL MOTIONS-   31**