FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 19, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| OTR WHEEL ENGINEERING, INC., BLACKSMITH OTR, LLC, and F.B.T. ENTERPRISES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WEST WORLDWIDE SERVICES, INC., and SAMUEL J. WEST, individually and his marital community, SSL Holdings, Inc., SSL Global, Inc., SSL China LLC, and Qingdao STW Tire Co., Ltd., <br><br> Defendants. | No. 2:14-CV-00085-LRS <br><br> **ORDER RE POST-APPEAL MOTIONS** |

**BEFORE THE COURT** is Plaintiffs' Renewed Motion For Permanent Injunction (ECF Nos. 646 and 647), Defendants' Motion For Recovery Of Cash Bond, And Increase Of Bond Amount, Or Alternatively To Reopen Discovery (ECF No. 648), and Defendants' Motion To Stay OTR's Recovery Of Judgment (ECF No. 650). These motions were heard with oral argument on December 11, 2018.

**I. BACKGROUND**

On May 14, 2014, this court entered a preliminary injunction against the Defendants (collectively referred to as "West"). (ECF No. 46). As ordered by the court, Plaintiffs (collectively referred to as "OTR") posted an injunction bond in the amount of $1.8 million. (ECF No. 47). The Ninth Circuit Court of Appeals

**ORDER RE POST-APPEAL MOTIONS-** 1

affirmed entry of the preliminary injunction, although it modified the scope of the injunction in certain respects. (ECF No. 130).

Trial was held from June 20 through June 30, 2016. On June 30, the jury returned a verdict (ECF No. 496) which found: 1) Plaintiffs' registered trade dress was invalid; 2) Defendants had removed the "*Outrigger*" trademark name on Outrigger tires or obscured the "*Outrigger*" trademark name on Outrigger tires (Plaintiffs' false designation of origin claim); 3) Defendants had not misappropriated trade secrets belonging to Plaintiffs; 4) Defendants had tortiously interfered with a business relationship between Plaintiffs and Genie; 5) Defendants had tortiously interfered with a business relationship between Solideal and Superhawk; 6) Defendants had tortiously interfered with a business relationship between Superhawk, Solideal and Plaintiffs; and 7) Defendants had violated the Washington Consumer Protection Act (WCPA). The jury awarded damages to Plaintiffs in the sum of $967,015.

On October 5, 2016, this court entered an "Order Re Post-Trial Motions" which, among other things, maintained the preliminary injunction pending appeal:

> The court concludes OTR will be substantially harmed if the preliminary injunction is lifted pending appeal. If the injunction were lifted, West would have free reign to sell their "Extremelift" tires to Genie and any other customer. If the injunction were lifted and the Ninth Circuit concludes on appeal that there should be a re-trial on the issue of the validity of OTR's registered trade dress (and/or a trial on unregistered trade dress) and whether it is infringed by West's "Extremelift" tire, OTR will have to offer evidence of all of West's sales during the pendency of the appeal and seek additional lost profits based on those sales. This would be burdensome and is avoided by maintaining the preliminary injunction pending appeal.
>
> One of the goals of the Lanham Act is protecting the public interest in fair competition in the market. **Maintaining the preliminary injunction ensures there is no unfair competition pending the Ninth Circuit's determination whether to uphold the jury's verdict finding OTR's registered trade dress invalid.**

(ECF No. 597 at pp. 27-28). (Emphasis added).

This court increased the injunction bond to $3 million, explaining as follows:

**ORDER RE POST-APPEAL MOTIONS- 2**

> When this court entered the preliminary injunction in May 2014, it set the bond at $1.8 million based on the representation of OTR's counsel that West stood to lose approximately $150,000 per month by being enjoined from selling their tire, and based on the assumption that trial would not occur for at least 12 months. (ECF No. 46 at p. 10). It has now been approximately 28 months since the preliminary injunction was entered. Taking into account that West currently owe OTR nearly $1 million because of the verdict for OTR on the false designation of origin claim, the court will increase the injunction bond by $1.2 million to $3 million.

(ECF No. 597 at p. 28).

This court denied, without prejudice, the Plaintiffs' motion for a permanent injunction, offering the following rationale:

> It appears OTR has thus far been made whole by the actual damages awarded to them by the jury representing profits lost after Genie chose West to supply size 355 tires for Genie's AWPs. West supplied those tires for an approximate one year period (May 2013 to May 2014) before they were enjoined from doing so by this court. OTR contend, however, that because "the West Defendants have expressed an unambiguous intention to resume efforts to sell tires sourced through West's tortious activities, not only to Genie but to others," their "future conduct will cause irreparable injury to OTR unless the court prevents it."
>
> As indicated above, the preliminary injunction will be maintained during the pendency of what the court presumes will be an appeal by OTR and likely by West, as well. Accordingly, it is unnecessary to rule on a permanent injunction at this time. Moreover, it would be premature to do so until appeals are concluded since the disposition of those could well have some bearing on if and when a permanent injunction is warranted.

(ECF No. 597 at p. 29).

In an order dated October 20, 2016, this court awarded pre-judgment interest to Plaintiffs on the damages award. (ECF No. 600). An Amended Judgment was entered (ECF No. 601) and appeals were taken by both Plaintiffs and Defendants.

On July 24, 2018, the Ninth Circuit Court of Appeals issued a published opinion affirming the jury's verdict on Plaintiffs' false designation of origin claim that Defendants were liable under the Lanham Act for reverse passing off OTR tires as being West's product. The circuit also affirmed this court's order denying a new trial on the issue of trade dress validity, thereby upholding the jury's verdict

**ORDER RE POST-APPEAL MOTIONS- 3**

finding Plaintiffs' trade dress invalid. The circuit also affirmed this court's rejection of Plaintiffs' proposed jury instruction asserting a claim for infringement of an unregistered trade dress. (ECF No. 632).

In an unpublished memorandum decision issued on the same date (ECF No. 633), the circuit affirmed the jury's verdicts on tortious interference and the WCPA, reversed the order granting prejudgement interest to the Plaintiffs, and vacated the preliminary injunction and remanded to this court for consideration of Defendants' claim against the injunction bond.

The circuit concluded that because it upheld the jury verdict finding Plaintiffs' registered trade dress invalid, there was no reason for the preliminary injunction to remain in effect. (ECF No. 633 at p. 8). In support of its conclusion, the circuit stated:

> OTR argues that even if its trade secret and infringement claims failed, its successful claims justify the retention of the preliminary injunction. We disagree. That does not appear to have been the intent of the district court, The comments by the court cited by OTR pertained to the possibility of West claiming against the bond for the restrictions imposed under the injunction prior to trial, not to maintaining the preliminary injunction pending appeal. **Moreover, OTR's successful claims would not ordinarily support the entry of injunctive relief, and the jury verdict here did not appear to support OTR's argument for maintaining the preliminary injunction. OTR prevailed on claims for reverse passing off, tortious interference, and violating the WCPA. Those claims assert singular harms and are therefore suitable to be remedied with damages, not an injunction.** Indeed, by awarding only part of the damages calculated by the OTR expert [Francis Burns], the jury indicated that further damages are not being suffered.[1]
>
> OTR has not cited any expert testimony indicating that West could not have developed and marketed his own product by now. West can presumably approach a customer without passing off an OTR tire, tortiously interfering in any of OTR's contracts or business relationships, or committing an unfair or deceptive act under the WCPA. **Absent the existence of a trade dress or some other intellectual property, West should not be enjoined from competing.**

---

[1] Burns calculated OTR's damages at $2.3 million. (ECF No. 564 at p. 1060).

**ORDER RE POST-APPEAL MOTIONS- 4**

> At this point, it appears appropriate to vacate the preliminary injunction. If there is a basis for further injunctive relief, it can be considered by the district court on remand, as the permanent injunction question is not before us.

(ECF No. 633 at pp. 8-9) (Emphasis added).

## II. PERMANENT INJUNCTION

For a permanent injunction to be issued, OTR must demonstrate: (1) they have suffered irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92, 126 S.Ct. 1837 (2006).

According to OTR, West has revealed it has "an unsold inventory of the same offending tires and assemblies (procured and sourced during the course of the same intentional misconduct that resulted in the damages verdict) numbering nearly 5000 additional units" and "[a]n unknown number of the same offending tires and assemblies may also be in the custody of U.S. Customs . . . ." OTR asserts "[t]hese tires and assemblies are legally identical in their status to those for which the jury awarded damages." The tires to which OTR refers are West's "Extremelift" branded production tires. OTR seeks an injunction prohibiting West from selling this current inventory of tires to Genie or anyone else, requiring an accounting and destruction of these tires, and an accounting and destruction of the plates, molds, matrices, and the means of making them. OTR's proposed permanent injunction would further prohibit West from procuring any more tires from Michael Zhang, Superhawk or Weihai Zhongwei, and require delivery to OTR of all examples of the West development/test tire in the custody and control of West or any other entity.

Prior to trial, there remained a possibility that West's "Extremelift" production tires would be found by the jury to be "offending" tires because they

**ORDER RE POST-APPEAL MOTIONS- 5**

either violated OTR's trade dress and/or were the result of misappropriation of OTR's trade secrets. Since the jury rendered its verdicts finding no trade dress violation and no misappropriation of trade secrets, there is no basis to consider them to have been tortiously obtained. These production tires are factually distinct from West's development/test tires as this court explained in its "Order Re Post-Trial Motions:"

> The jury . . . found West culpable of false designation of origin under the Lanham Act in that they provided Genie with test tires from which the "*Outrigger*" trademark had been removed and passed those tires off as their own. It is this act of unfair competition which resulted in Genie deciding to purchase West's "Extremelift" production tires. The jury awarded OTR $967,015 in damages representing the profits OTR lost since they were unable to sell their Outrigger tires to Genie because Genie bought West's production tires instead.

(ECF No. 597 at p. 26).

The jury found the development/test tires were actual Outrigger tires made from an Outrigger (Solideal) mold. As the Ninth Circuit explained in its published opinion:

> There was evidence that West did pass off actual OTR tires. West asked Superhawk to make tires to fill an anticipated order for Solideal, OTR's partner, in advance and to hold most of the tires until Solideal placed the order. West wanted to make ten of these OTR tires to provide to Genie as his own development tires. The jury could therefore conclude that the development tires were taken from part of an anticipated OTR (Solideal) order and were genuine OTR products, not just copies.

(ECF No. 632 at p. 13).[2]

---

[2] See also ECF No. 632 at p. 15 where the circuit found there was "substantial evidence that West used an Outrigger mold for his development tire and added blank spring plates over areas that would have imprinted the Outrigger's identifying information onto tires."

**ORDER RE POST-APPEAL MOTIONS- 6**

There is no evidence that West's "Extremelift" branded production tires were made from an Outrigger (Solideal) mold. Rather, Plaintiffs' own expert, Owsley Cheek, testified at trial that West's "Extremelift" production tires were not made from the same mold as the Outrigger tire. (ECF No. 555 at p. 154). The jury found those production tires did not infringe any intellectual property rights of OTR.

The "Extremelift" production tires are not "legally identical in their status" to the development/test tires. Of course, the "Extremelift" production tires sold by West to Genie during the period from May 2013 to May 2014 were considered by the jury in measuring Plaintiffs' damages, those being primarily the profits lost by OTR during that time because West had displaced OTR as Genie's supplier of 355-sized tires as a result of West's deception regarding the development/test tires. What was tortiously obtained by West, however, were not the "Extremelift" production tires themselves, but Genie's business for a period of time. This is what the jury found and for which it compensated OTR with an award of damages. When this court entered its preliminary injunction in May 2014, OTR resumed being Genie's supplier for 355-sized tires and apparently has continued as the supplier to the present date.

West's intentional misconduct in reverse passing off OTR tires, despite its egregiousness, was remedied by the jury's damages award. There is no longer a continuing injury as a result of West's misconduct. Per the jury's verdict finding no trade dress violation and no misappropriation of trade secrets, West's production tires do not constitute an injury to OTR. As this court discussed in its "Order Re Post-Trial Motions" (ECF No. 597 at pp. 23-24 and n. 15), it fails to see how the tortious interference and WCPA verdicts in favor of OTR constitute a finding that West's "Extremelift" production tires are a source of injury to OTR, independent of the false designation of origin verdict resulting from the reverse passing off of the genuine Outrigger development/test tires.

**ORDER RE POST-APPEAL MOTIONS- 7**

Jury Instruction No. 35 regarding tortious interference with a business relationship between Superhawk, Solideal and OTR informed the jury that OTR had the burden of proving "[t]hat at the time West convinced Michael Zhang of SuperHawk to make tires for Defendants, OTR had a business relationship with Solideal and an expectancy that it (through SuperHawk) would not make the **Outrigger** tire for anyone else." (ECF No. 500). (Emphasis added). The jury found the development/test tires were **Outrigger** tires. It made no such finding with regard to West's production tires.[3] In its unpublished memorandum decision, the Ninth Circuit noted that OTR's prevailing on its reverse passing off claim supported the jury verdict in favor of OTR on its WCPA claim. (ECF No. 633 at p. 5).

In his closing argument to the jury, what Plaintiffs' counsel argued with regard to the tortious interference claims was West's activity in submitting the dis-branded OTR development/test tires to Genie in order to gain Genie's business. (ECF No. 570 at pp. 1769-89). Counsel described this as the "background that brings up the next door, tortious interference." (*Id.* at 1781). While counsel also

---

[3] The Ninth Circuit found this court's instruction regarding tortious interference with a contract between Solideal and Superhawk may have been erroneous because it did not state that OTR must have been the party whose contractual relationship was interfered with. The circuit, however, found any error to be harmless because "[t]he jury was instructed to calculate damages if it found tortious interference with a contract *or* a business relationship" and "[t]he interference at issue here is the same, regardless of whether the offending conduct was interference in a contract or a relationship." (ECF No. 633 at p. 4).

**ORDER RE POST-APPEAL MOTIONS- 8**

argued to the jury that Michael Zhang violated his duty of confidentiality to Solideal and in turn to OTR by divulging OTR's trade secrets to West (*Id.* at 1789), the jury found West did not misappropriate any trade secrets with regard to his production tires. Consistent with the allegations pled in the First Amended Complaint (ECF No. 179 at Paragraphs 4, 40-50, 95 and 108), OTR argued up to and including through trial that the issue with West's production tires was they violated OTR's intellectual property rights.[4]

Because of the absence of injury resulting from West's production tires, there is no need for the court to discuss the balance of hardships and public interest factors. Nevertheless, it seems Genie knows or should know what has occurred in this litigation and therefore, can now make a fully informed decision whether to purchase tires from West. Genie can perform safety testing on the actual tires that West would now supply. The public interest is not jeopardized by this court not granting the permanent injunction requested by OTR.

The Ninth Circuit stated "OTR's successful claims would not ordinarily support the entry of injunctive relief" and those claims "assert singular harms and are therefore suitable to be remedied with damages, not an injunction." OTR's

---

[4] The First Amended Complaint sought a permanent injunction requiring West to destroy all "counterfeit" tires and "refrain from making any further use of OTR Marks and the OTR Trade Secrets" in competition with OTR or for any other purpose." (ECF No. 179 at Paragraph 108). See also Declaration of Julie Sampson (ECF No. 522 at Paragraph 40) asserting that "[a]s Superhawk director and employee, Zhang was subject to personal obligations not to divulge Solideal technology to third parties, as detailed in the Solideal-Superhawk agreement . . . ."

**ORDER RE POST-APPEAL MOTIONS- 9**

Renewed Motion For Permanent Injunction does not persuade otherwise. There is not "a basis for further injunctive relief." Because of the absence of a trade dress or other intellectual property rights, there is no present basis to enjoin West from competing with OTR (selling existing production tires to Genie and others, and arranging for the manufacturing of "Extremelift" production tires from the manufacturer of West's choosing).

West claims Superhawk has not had any Outrigger molds since November 2, 2012, when Camoplast Solideal retrieved those molds and moved them to its factory in China. OTR requests that West not only account for Outrigger molds, but for the whereabouts of any development/test tires made from such molds similar to the development/test tires submitted to Genie for testing in 2012. OTR asserts these "dis-branded test tires are likely to be important evidence in potential future litigation by Genie or involving Genie," contending "there may be tort actions brought by users of Genie lifts bearing the untested 'Extremelift' tires, particularly by parties allegedly injured due to the failure of Extremelift tires."

OTR requests the court to "enjoin West from any further false designation of origin, including efforts to remove or obscure genuine origin information from tires." OTR, however, has not proven a real and immediate threat of future false designation of origin by West. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660 (1983), quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96, 94 S.Ct. 669 (1974)("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects"). West knows such conduct is illegal. A jury has awarded damages against West for such conduct and West risks another lawsuit and another damages award if West engages in such conduct in the future. As discussed herein, Genie knows or should know by now that a jury found West liable for false designation of origin by reversing passing off an Outrigger tire as their own development/test tire. Genie and other customers can take this

**ORDER RE POST-APPEAL MOTIONS- 10**

information into account in any future business dealings with West, including evaluation of any development/test tires submitted by West. There is no evidence in the record regarding failure of "Extremelift" tires sold by West to Genie between May 2013 and May 2014. And if another episode of false designation of origin were to occur, it can be remedied by an award of damages in another lawsuit, as it was remedied in the present lawsuit as a "singular harm." Accordingly, a permanent injunction concerning OTR molds and any development/test tires made from the molds is not justified.

### III. RECOVERY AGAINST INJUNCTION BOND

In its "Order Re Post-Trial Motions," this court found Defendants had not been wrongfully enjoined pending trial:

> West were not wrongfully enjoined by virtue of the preliminary injunction entered against them, notwithstanding that the jury found OTR's registered trade dress invalid and found that West did not misappropriate any OTR trade secrets. The jury also found West culpable of false designation of origin under the Lanham Act in that they provided Genie with test tires from which the "*Outrigger*" trademark had been removed and passed those tires off as their own. It is this act of unfair competition which resulted in Genie deciding to purchase West's "Extremelift" production tires. The jury awarded OTR $967,015 in damages representing the profits OTR lost since they were unable to sell their Outrigger tires to Genie because Genie bought West's production tires instead. Accordingly, it was appropriate for this court to preliminarily enjoin West from selling any production tires pending trial and resolution of whether West's production tires misappropriated OTR trade secrets and infringed OTR's registered trade dress.

(ECF No. 597 at p. 26).

As West points out, this court issued the preliminary injunction based on OTR having a fair chance of succeeding on their trade dress and trade secret claims. (ECF No. 146). And in affirming this court's issuance of the preliminary injunction in its March 18, 2015 memorandum decision, the Ninth Circuit struck the language this court included in the preliminary injunction prohibiting West from "making any false description or representation of origin concerning any

**ORDER RE POST-APPEAL MOTIONS- 11**

good or services offered for sale by Defendants." (ECF No. 130 at p. 8). Nevertheless, this court maintains West was not wrongfully enjoined pending trial as evidenced by the jury's verdict that West used a dis-branded Outrigger tire in order to acquire Genie's business and sell West's "Extremelift" production tires to Genie. West had already been selling those tires to Genie for a year (May 2013 to May 2014) before this court issued its preliminary injunction stopping West from continuing to sell those tires to Genie pending trial. Had West not been enjoined, it would have continued to sell its production tires to Genie and reaped profits from what the jury found to be false pretenses on the part of West.

In its July 24, 2018 unpublished memorandum decision (ECF No. 633 at pp. 8-9), the Ninth Circuit correctly ascertained this court's intent that it did not find OTR's successful claims (reverse passing off, tortious interference, and violating the WCPA) warranted keeping the preliminary injunction in place **pending appeal**. This court found only that the successful claims revealed that keeping the preliminary injunction in place **pending trial** was not wrongful. Pending trial, West was not entitled to continue selling production tires to Genie whose business it had procured through deception. OTR's success on its reverse passing off, tortious interference and WCPA claims vindicated this court's preliminary injunction precluding West from selling any more production tires to Genie pending trial.

This court was justified in maintaining the preliminary injunction pending appeal for the reasons provided in its "Order Re Post-Trial Motions" (ECF No. 597at p. 27-28). The preliminary injunction was maintained during the pendency of the appeal not because of the claims on which OTR succeeded at trial, but in recognition of the possibility that the claims on which it had not succeeded (violation of trade dress and misappropriation of trade secrets) could be resurrected on appeal.

That this court was justified in maintaining the preliminary injunction

**ORDER RE POST-APPEAL MOTIONS- 12**

pending appeal does not, however, mean West was not wrongfully enjoined pending appeal. A party is wrongfully enjoined under Fed. R. Civ. P. 65(c) when it turns out the party enjoined had the right all along to do what it was enjoined from doing. *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032 (9th Cir. 1994). This court increased the amount of the injunction bond because the jury found OTR had no intellectual property rights in its 355-sized AWP tires and because it was likely the Ninth Circuit would affirm that verdict on appeal. The circuit affirmed the jury's verdict finding no trade dress violation. Accordingly, West should have been able to sell its "Extremelift" production tires during the pendency of the appeal.

OTR continues to mention "unregistered trade dress" which it asserts "was unaffected by the judgment entered." It was unaffected by the judgment entered because this court did not allow OTR to present such a claim to the jury and the Ninth Circuit affirmed that ruling. (ECF No. 632 at pp. 28-30). Any "unregistered trade dress" claim is irrelevant to the question of whether West was wrongfully enjoined pending appeal.[5]

OTR seemingly attempts to resurrect its trade secrets claim even though the jury found West did not misappropriate any of OTR's trade secrets and OTR did not appeal that verdict to the Ninth Circuit. According to OTR, "[w]hile the jury did not find West liable for *direct* misappropriation of trade secrets, the jury's findings necessarily indicate that West *indirectly* used them." OTR says "Sam West, by suborning Superhawk and Michael Zhang and ignoring Zhang's repeated warning about those relationships [the relationships between OTR, Solideal and Superhawk], convinced them to use those trade secrets in violation of their

---

[5] In any event, the jury's finding of "functionality" with regard to registered trade dress would apply to an unregistered trade dress claim based on the same tire characteristics.

**ORDER RE POST-APPEAL MOTIONS- 13**

confidentiality and non-compete agreements and unlawfully obtained such tires for sale."[6] OTR cites a portion of the Ninth Circuit's published decision in support of this statement (ECF No. 632 at pp. 12-18), but what that discusses in terms of West's tortious activity is not misappropriation of trade secrets, but rather his reverse passing off of an Outrigger development/test tire to Genie as his own tire after having Superhawk remove the "*Outrigger*" trademark name and other Outrigger identifying information.

The manufacture and sale of the production tires was not the tortious activity found by the jury. The tortious activity was West's use of a dis-branded OTR development/test tire to persuade Genie to buy West's "Extremelift" production tires. It is for this tortious activity that the jury awarded damages to OTR, concluding that had West not obtained Genie's business under false pretenses, Genie would have continued to buy OTR's tires instead of buying West's production tires during the relevant one year period (May 2013 to May 2014). Notwithstanding West's egregious misconduct, the jury's award of damages fully remedied the harm suffered by OTR. It brought the curtain down on that episode of misconduct and effectively pushed the reset button on the possibility of legitimate and fair competition between OTR and West for Genie's business. Because it has now been revealed what transpired in 2012 when West submitted dis-branded Outrigger tires to Genie for testing, Genie and any other customers can make informed decisions whether they want to conduct business with West.

---

[6] This is yet another acknowledgment by OTR that its claims for tortious interference with contract between Solideal and Superhawk, and with a business relationship between Superhawk, Solideal and OTR, have always been premised on an alleged violation of intellectual property rights.

**ORDER RE POST-APPEAL MOTIONS- 14**

"[T]here is a rebuttable presumption that a wrongfully enjoined party is entitled to have the [injunction] bond executed and recover provable damages up to the amount of the bond." *Nintendo*, 16 F.3d at 1036. The purpose of the presumption is to discourage parties from pursuing injunctions on tenuous legal grounds and assure that an enjoined defendant will be compensated for its damages if it later turns out that it was wrongfully enjoined. *Newspaper & Periodical Drivers' & Helpers' Union, Local 921 v. San Francisco Newspaper Agency*, 89 F.3d 629, 631 (9th Cir. 1996). Once the party seeking recovery adequately establishes its damages, the court must "have a 'good reason' to deny recovery against the bond, and the burden is then on the nonmoving party to establish that "good reason." *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 559 (2nd Cir. 2011). A defendant's failure to mitigate damages is a good reason for denying recovery. *Coyne-Delany Co., Inc. v. Capital Develop. Bd of State of Illinois*, 717 F.2d 385, 392 (7th Cir. 1983).

West is potentially entitled to recover against the injunction bond any damages actually and proximately resulting from the effect of the preliminary injunction from the date of the verdict on June 30, 2016, through the date of the issuance of the Ninth Circuit's mandate on September 12, 2018. *Matek v. Murat*, 862 F.2d 720, 733 (9th Cir. 1988). West bears the burden of demonstrating its damages were proximately caused by the preliminary injunction. *U.S. D.I.D. Corp. v. Windstream Communications, Inc.*, 775 F.3d 128, 144 (2nd Cir. 2014). West need not prove damages with mathematical certainty, but it must prove them with reasonable certainty by a preponderance of evidence. *Nintendo*, 16 F.3d at 1038-39.

Absent evidence of malicious prosecution or abuse of process, a defendant's right of recovery is limited to the security ordered by the court. *Buddy Systems, Inc. v. Exer-Genie*, 545 F.2d 1164. 1167-68 (9th Cir. 1976). The injunction bond generally limits the plaintiff's liability and informs of the price plaintiff can expect

**ORDER RE POST-APPEAL MOTIONS- 15**

to pay if the injunction was wrongfully issued. *Sprint Communications Co. L.P. v. CAT Communications Int'l, Inc.*, 335 F.3d 235, 240 (3rd Cir. 2003). Accordingly, West's potential recovery is limited to the $3 million injunction bond. The court no longer has authority to modify the amount of the bond as requested by West. Fed. R. Civ. P. 62(c) is of no avail as the appeal in this matter is no longer pending. Citing *Hoffman v. Beer Drivers & Salesman's Local Union No. 888,* 536 F.2d 1268, 1276 (9th Cir. 1976), and *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002), West says the court "maintains the inherent authority to modify an injunction where 'new facts are created by the parties and the maintenance of the status quo requires new action." These cases say nothing about modification of the injunction bond when the appeal is no longer pending. Furthermore, no "new facts" were created by the parties. It is true this court increased the injunction bond amount based on the 28 months period between issuance of the preliminary injunction (May 2014) and when this court issued its "Order Re Post-Trial Motions" (October 2016), but because West was not wrongfully enjoined pending trial, the bond amount, as calculated based on the representation of OTR's counsel (Leslie Weatherhead, Esq.) to the court during the May 7, 2014 preliminary injunction hearing, covers the approximately 27 months from when the Judgment was entered on the jury verdict (June 30, 2016) to when the Ninth Circuit Court of Appeals issued its mandate (September 12, 2018).

Mr. Weatherhead's representation was essentially all the court had to go on when it originally set the bond amount at $1.8 million. At that time, West offered no suggestion regarding an appropriate bond amount. And while in its July 1, 2016 "Motion To Suspend Or Lift The Preliminary Injunction And For Recovery Of Cash Bond" (ECF No. 499 at p. 9), West asserted its lost profits had far exceeded the $1.8 million bond, it again offered no suggestion regarding a specific increased bond amount (see ECF No. 597 at p. 27, n. 21) and apparently remained

**ORDER RE POST-APPEAL MOTIONS- 16**

content to proceed through the appeal process with a $3 million injunction bond in place.

Mr. Weatherhead's "quick figuring," off-the-cuff estimate four and a half years ago that West stood to lose between $140,000 to $150,000 in monthly profits as a result of a preliminary injunction (ECF No. 45 at p. 68) does not satisfy West's burden of proving with "reasonable certainty" the damages incurred by it during the pendency of the appeal. Accordingly, the court will grant West's request to reopen discovery. West will be allowed to conduct discovery pertaining to: 1) OTR's sales of any 355-sized tires for any AWP machinery occurring from the date of the jury verdict (June 30, 2016) through issuance of the mandate from the circuit (September 12, 2018); and 2) OTR's communications with Terex/Genie, JLG or any third party that in any matter discusses or relates to West from the date of the jury verdict through issuance of the mandate.[7]

Nor does Mr. Weatherhead's representation regarding West's potential lost profits take into account any mitigation of damages which should have been undertaken by West. Accordingly, OTR will be allowed to conduct discovery as to West's communications with Terex/Genie or other potential customers regarding supplying 355-sized AWP tires from the date of the jury verdict through the issuance of the mandate, as well as the basis for West's calculation of damages against the injunction bond. The court will not restrict the type of discovery which the parties are allowed to conduct (e.g., depositions, interrogatories, etc.). The court will set a discovery deadline which assumes discovery can be completed

---

[7] Because the Ninth Circuit vacated the preliminary injunction, the court questions the relevancy of sales and communications following issuance of the mandate. Seemingly nothing precluded West from communicating to Genie that the preliminary injunction had been vacated.

**ORDER RE POST-APPEAL MOTIONS- 17**

within approximately ninety (90) days.

## IV. STAY OF JUDGMENT AND RECOVERY AGAINST SUPERSEDEAS BOND

This court has yet to correct the Amended Judgment to eliminate the award of prejudgment interest to OTR as directed by the circuit. Furthermore, this court increased the injunction bond to $3 million taking into account the nearly $1 million which the jury awarded to OTR in damages. Had the court not done that, it would have set the injunction bond at around $4 million. As discussed above, the court no longer has authority to modify the injunction bond. These special circumstances compel the court to stay entry of a Second Amended Judgment and OTR's recovery against the supersedeas bond posted by West pending determination of the amount of damages West is entitled to recover against the $3 million injunction bond.

## V. CONCLUSION

Plaintiffs' Renewed Motion For Permanent Injunction (ECF Nos. 646 and 647) is **DENIED**.

Defendants' Motion For Recovery Of Cash Bond And Increase Of Bond Amount , Or Alternatively To Reopen Discovery (ECF No. 648) is **GRANTED** to the extent that discovery is reopened. Discovery shall be completed no later than **April 1, 2019**. No later than **April 15, 2019**, Defendants will file a new Motion For Recovery Of Cash Bond.

Defendants' Motion To Stay OTR's Recovery Of Judgment (ECF No. 650) is **GRANTED**. OTR's recovery of judgment is stayed pending determination of the amount of damages West is entitled to recover against the injunction bond and entry of a Second Amended Judgment.

Pending completion of discovery and resolution of Defendants' new Motion

**ORDER RE POST-APPEAL MOTIONS- 18**

For Recovery Of Cash Bond, the court will continue to stay the motions and matters previously stayed in its October 11, 2016 order (e.g., attorney fee motions). (ECF No. 599). It appears these motions will require supplementation at the conclusion of the proceedings relating to Defendants' recovery against the injunction bond.

The parties are encouraged to consider mediation. The court notes that in this district, U.S. Magistrate Judges are available for this purpose upon joint request by the parties.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and provide copies to counsel of record.

**DATED** this ___19th___ day of December, 2018.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
Senior United States District Judge

**ORDER RE POST-APPEAL MOTIONS- 19**