UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| OTR WHEEL ENGINEERING, INC., BLACKSMITH OTR, LLC, and F.B.T. ENTERPRISES, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>WEST WORLDWIDE SERVICES, INC., and SAMUEL J. WEST, individually and his marital community, SSL Holdings, Inc., SSL Global, Inc., SSL China LLC, and Qingdao STW Tire Co., Ltd.,<br><br>    Defendants. | No. 2:14-CV-00085-LRS<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION** |

**BEFORE THE COURT** is Plaintiffs' Motion For Reconsideration of Order Denying Permanent Injunction (ECF No. 687). This motion is heard without oral argument.

**I. RECONSIDERATION STANDARD**

Fed. R. Civ. P. 60(b)(6) permits a court to relieve a party from an order for "any reason that justifies relief." It "is to be used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances exist." *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008). "A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered

**ORDER DENYING MOTION FOR RECONSIDERATION-**     1

evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009).

## II. DISCUSSION

Plaintiffs (collectively referred to as "OTR") contend the court, in its order filed December 19, 2018 (ECF No. 685), "committed clear error in concluding that the remaining unsold production tires were not, like the test tires, also 'tortiously obtained,' . . . and that it erred in not recognizing the direct chain of causation between West's unlawful obtaining of the test tires and its subsequent sale of production tires, which would otherwise never have occurred." Plaintiffs assert the tortious interference and Washington Consumer Protection Act (WCPA) verdicts stand alone and are independent of reverse passing-off, trademark infringement and misappropriation of trade secrets.

OTR essentially appears to argue that Defendants' (West's) production tires, even though not made from a Solideal (Outrigger) mold and not infringing OTR's trade dress or misappropriating any of OTR's trade secrets, were "tortiously obtained" by West because of the mere fact Superhawk manufactured those "competing" size 355 tires for West to sell to Genie or any other third party. According to OTR, this constituted a violation of the non-competition agreement between Solideal and Superhawk, sufficient by itself to support the jury's verdict that West tortiously interfered with a business relationship between Solideal and Superhawk, and with a business relationship between Superhawk, Solideal and OTR, and that it furthermore constituted an unfair and deceptive act under the WCPA.

Prior to trial, OTR had numerous opportunities in its pleadings, in its briefing in support of and against multitudinous dispositive motions, and in its

**ORDER DENYING MOTION FOR RECONSIDERATION-    2**

trial brief and the agreed pre-trial order, to make clear it was contending the fact West had Superhawk make "Extremelift" production tires for it constituted a violation of the non-competition agreement between Solideal and Superhawk and was a basis for its tortious interference and WCPA claims. OTR did not do that and indeed, considering there is no dispute Superhawk made tires for West, it is difficult to comprehend why, if it had done so, OTR would not have pursued summary judgment on this basis in regard to its tortious interference and WCPA claims.

OTR claims it never argued its tortious interference or WCPA claims depended on its trademark infringement or trade secret claims, but the fact is it never argued otherwise to this court or to the jury. OTR's trial brief clearly premised its tortious interference and WCPA claims on transgression of its intellectual property rights either by trademark counterfeiting, trademark infringement, reverse passing off, or trade secret misappropriation. In the "Introduction" section of its trial brief, OTR wrote:

> In October 2012, Plaintiffs became aware that an essentially identical tire had been introduced into commerce, and upon investigation, ultimately identified Defendants as the sellers. During the course of Plaintiffs' investigation, they confirmed that these **counterfeit** tires had in fact been produced by a contract manufacturer in China that had been engaged to produce tires for Plaintiffs' affiliate Solideal, **using Plaintiffs' trade secrets.** Plaintiffs filed this action to halt Defendants' unfair competition.

(ECF No. 420 at pp. 2-3)(emphasis added).

OTR's trial brief discussed its claims for trademark counterfeiting, trademark infringement, false designation of origin and trade secret misappropriation before discussing its WCPA and tortious interference claims. Nothing in the discussion of the WCPA and tortious interference claims (ECF No. 420 at pp. 23-27) suggested they were premised on anything other than alleged violations of intellectual property rights.

**ORDER DENYING MOTION FOR RECONSIDERATION-** 3

OTR notes that in its trial brief, it explained that "[e]ven if Plaintiffs do not establish a claim for trademark infringement or trade dress infringement, . . . they can still prove a CPA claim." (ECF No. 420 at p. 25). That was certainly true since false designation of origin under the Lanham Act and/or misappropriation of trade secrets could establish a WCPA claim. As this court noted previously, the Ninth Circuit upheld the jury verdict in favor of OTR on its WCPA claim because OTR prevailed on its reverse passing off claim (false designation of origin claim). (ECF No. 633 at p. 5).

With regard to its tortious interference claims, OTR alleged that West caused Genie to breach its contract with OTR and "also intentionally induced or caused the termination of the business relationship between OTR and Genie when Genie committed to selling West's **counterfeit infringing tires**." (ECF No. 420 at p. 27)(emphasis added). OTR further alleged that West interfered with OTR's contracts and business relationships (via Superhawk) in that West convinced Michael Zhang of Superhawk to make tires for West and "West knew that SuperHawk had a contract to make the **Outrigger tire** for Solideal, and OTR had a contractual business relationship with Solideal and an expectancy that it (through Superhawk) would not make the **Outrigger** for anyone else." (ECF No. 420 at p. 27)(emphasis added). The jury concluded Superhawk did not make an Outrigger production tire for West and that West did not sell any "counterfeit infringing" production tires to Genie.[1]

---

[1] The development/test tires which West submitted to Genie were neither counterfeit or infringing. Per the jury's verdict for OTR on its false designation of origin claim, those tires were genuine Outrigger tires which West passed off as its

**ORDER DENYING MOTION FOR RECONSIDERATION-    4**

The parties' Amended Joint Pretrial Order (ECF No. 421) likewise indicated OTR's WCPA and tortious interference claims were premised on alleged violations of its intellectual property rights. In "Plaintiffs' Statement of Nature of Proceedings," OTR stated it was seeking "a permanent injunction to restrain any future trademark infringement and future use of trade secrets."[2]

After setting forth its contentions regarding "Trademark Infringement and Counterfeiting" and the "Uniform Trade Secret Act," OTR set forth its contentions regarding the "Consumer Protection Act" and "Tortious Interference." Plaintiffs' contentions regarding the WCPA included the following:

> West has engaged in unlawful and deceptive acts and practices in trade or commerce by its building, importing, offering and selling its unauthorized version of tires bearing a counterfeit of one or more of the OTR Marks and the OTR Outrigger Trade Dress (the "Counterfeit Tires") because of their nature as counterfeits and because of the misappropriation and deception by West that accompanied their sales.

(ECF No. 421 at pp. 10-11).

Plaintiffs' contentions regarding the tortious interference claims included the following:

> West induced Superhawk to use OTR's trade secrets and technology for the benefit of West and to the detriment of OTR. These trade secrets were entrusted to Solideal, and

---

own tires.

[2] This was entirely consistent with what it stated in its First Amended Complaint. The First Amended Complaint sought a permanent injunction requiring West to destroy all "counterfeit" tires and "refrain from making any further use of OTR Marks and the OTR Trade Secrets" in competition with OTR or for any other purpose." (ECF No. 179 at Paragraph 108)

**ORDER DENYING MOTION FOR RECONSIDERATION-    5**

> by Solideal to Superhawk, and under West's inducement used by Superhawk contrary to Solideal's authorization, in order to make the Counterfeit Tires West sold to Genie, causing or enabling Genie to curtail its business relationship with OTR.

(ECF No. 421 at pp. 11-12).[3]

The "Issues Of Fact" listed by Plaintiffs in the Amended Joint Pre-trial Order included the following:

> Whether Defendants, having knowledge of OTR's relationship with Solideal and an expectancy that Solideal, and through Solideal, Superhawk would not make the **Outrigger** for anyone else, interfered with that business relationship by improper means.

(ECF No. 421, Paragraph 12 at p. 31)(emphasis added). The jury concluded Superhawk did not make an Outrigger production tire for West (a tire that counterfeited or infringed OTR's trade dress or misappropriated OTR trade secrets). OTR did not allege its "expectancy" was that Superhawk would not make a "size 355 tire" for anyone else.

The "Issues Of Law" listed by Plaintiffs in the Amended Joint Pretrial Order (ECF No. 421 at pp. 34-37) specifically discussed trademark infringement, trademark counterfeiting and trade secret misappropriation without distinguishing the WCPA and tortious interference claims.

Per the Amended Joint Pretrial Order, OTR requested a permanent injunction enjoining Defendants from "any importation, manufacture, assembly,

---

[3] The court is not persuaded there is some material distinction between trade secrets and "technology" allowing for a conclusion that OTR's tortious interference claims were based on something other than transgression of intellectual property rights. OTR certainly did not argue to the court or to the jury that there was a material distinction.

**ORDER DENYING MOTION FOR RECONSIDERATION-        6**

advertisement, promotion, offer for sale, sale, purchase, distribution, movement or transfer of, or any other involvement with tire products bearing any of OTR's trademarks, including the OUTRIGGER word trademark or the OTR Outrigger Trade Dress . . ., or any other colorable imitation of the OTR marks on or in connection with tires or products." (ECF No. 421, Paragraph 2 at p. 48). OTR further requested that Defendants be required "to deliver to OTR or to an officer of the Court any colorable imitations of the *Outrigger* tire in Defendants' possession or control, plus all means of production of the Counterfeit Tires, plus all records documenting the manufacture, sale or receipt of the Counterfeit Tires, or their constituent parts or compounds." (ECF No. 421, Paragraph 3 at pp. 48-49).

Based on what OTR had set forth in the Amended Joint Pretrial Order, West certainly would have objected if OTR had argued to the jury that it could find tortious interference and a violation of WCPA because West had Superhawk make size 355 tires for it, even if those tires did not transgress any of Plaintiffs' intellectual property rights. OTR, however, did not make such an argument in either its opening or closing arguments at trial.

In his opening, OTR's counsel told the jury the issue was that tires sold by West to Genie "infringe our trademark because they use our tread design, and they're made through the use- the unauthorized use of our trades secrets; and I hope once we've completed our presentation, you'll be satisfied that that's what the evidence has shown you." (ECF No. 555 at pp. 43-44). Just before making that statement, counsel referred to Michael Zhang's "confidentiality" obligation which counsel would repeat in his closing argument in reference to Zhang allegedly not being allowed to use OTR's trade secrets to make tires for West because of the agreement between Solideal and Superhawk.

Counsel's entire closing argument was premised on West having violated one or more of OTR's intellectual property rights, either trademarks or trade

**ORDER DENYING MOTION
FOR RECONSIDERATION-       7**

secrets. Counsel referred to each of OTR's six claims as representing a door and commenced his argument by discussing Lanham Act claims: trademark counterfeiting (first door) and trademark infringement (second door). Regarding those counterfeiting and infringement claims, counsel noted the email exchange between Sam West and Michael Zhang in which Zhang said it would be "dangerous to use the Solideal mold" because "we [Superhawk] have an agreement with Solideal." (ECF No. 570 at p. 1771, Lines 16-18). Counsel repeated this to the jury several other times, emphasizing that the violation of the agreement involved the use of a Solideal mold. (ECF No. 570 at p. 1773, Lines 12-15; p. 1780, Lines 4-10). In its "Order Re Post-Appeal Motions," this court noted there was no evidence that West's production tires were made from a Solideal mold and the jury found those tires did not infringe any intellectual property rights of OTR. (ECF No. 685 at p. 7).

With this "background," counsel began discussing tortious interference (the third door). (ECF No. 570 at p. 1781, Lines 5-6). Referring to the agreement between Solideal and Superhawk, counsel stated:

> Solideal made that agreement with Superhawk - - meaning confidentiality agreement, noncompetition agreement - - for the benefit of OTR **because Solideal held those trade secrets**; and Sam West induced Mike Zhang to violate that agreement.

(ECF No. 570 at p. 1781, Lines 16-21)(emphasis added). Counsel went on to assert that "West induced . . . the breach of the obligation that Mike Zhang had that was to control **genuine OTR tires** being made by Superhawk in China." (ECF No. 570 at p. 1782, Lines 3-6)(emphasis added). While the jury concluded the development/test tires submitted by West to Genie were "genuine OTR tires," it made no such conclusion regarding West's production tires.

Counsel argued that "a very similar set of facts" supported OTR's WCPA claim (the fourth door), specifically noting how trademarks affect the public

**ORDER DENYING MOTION FOR RECONSIDERATION-    8**

interest. (ECF No. 570 at p. 1782, Lines 11-16). After discussing false designation of origin (fifth door), counsel addressed OTR's trade secrets misappropriation claim (the sixth and final door). Here again, counsel revisited Zhang's "confidentiality obligation" and his duty to "maintain the trade secret, or limit its use." (ECF No. 570 at p. 1785, Lines 21-25; p. 1786, Lines 1-5). See also ECF No. 570 at p. 1788, Lines 15-20 (Solideal-Superhawk agreement "not for supply, but for confidentiality); ECF No. 570 at p. 1789, Lines 3-13 (Zhang owed a "duty of confidentiality" because he had a noncompete agreement and he knew the trade secrets from his time as a manager at Solideal; Zhang had a "secrecy obligation").

In sum, from its First Amended Complaint through its closing argument at trial, OTR argued that the alleged violation of the Solideal-Superhawk agreement involved Michael Zhang using OTR trade secrets in the manufacturing of West's production tires. The instructions given to the jury regarding the WCPA and tortious interference claims did not diverge from this. OTR notes that Instruction No. 40 (ECF No. 500) informed the jury that if it did not find that OTR proved any of its claims for trade dress infringement or false designation of origin (the Lanham Act claims), the jury could still find OTR proved the first element of its WCPA claim if it found West engaged in an "unfair or deceptive act or practice." This was accurate because even if the jury did not find a violation of the Lanham Act, it could still find there was a violation of Washington's Uniform Trade Secret Act as set forth in Instruction Nos. 24-30. Indeed, Instruction No. 43 which discussed the proximate cause element of a WCPA claim specifically mentioned "trade secret misappropriation" in addition to "interference with OTR's contracts and/or business relationships." Pleading a WCPA claim in addition to other claims is common as the WCPA offers certain unique potential remedies, including treble damages and attorney's fees and costs. RCW 19.86.090.

**ORDER DENYING MOTION
FOR RECONSIDERATION-     9**

Consistent with what OTR argued to the jury concerning tortious interference with the agreement between Solideal and Superhawk, Instruction No. 32 referred not to the making of any size 355 tire, but specifically to the making of the "Outrigger tire." Likewise, Instruction No. 35 informed the jury that to recover on a claim of tortious interference with a business relationship between Superhawk and Solideal, OTR had the burden of proving that "at the time West convinced Michael Zhang of SuperHawk to make tires for Defendants, OTR had a business relationship with Solideal and an expectancy that it (through SuperHawk) would not make the **Outrigger tire** for anyone else." (Emphasis added). The expectancy was not defined as Superhawk not making any size 355 tire for anyone else. The expectancy was Superhawk would not make a counterfeit or infringing version of the Outrigger tire for anyone else that violated OTR's rights under the Lanham Act and/or misappropriated OTR trade secrets. OTR counsel's references to "355 tires" in his closing argument were not to just any "355 tires," but to production tires which had allegedly been made in a Solideal mold (counterfeit or infringing Outrigger tires which may have also misappropriated OTR trade secrets).[4]

---

[4] The facts pled in Plaintiff's First Amended Complaint at Paragraphs 39-67 are essentially the same facts Plaintiffs presented in their Trial Brief, in the Amended Joint Pre-trial Order, and in their opening and closing arguments at trial. Those alleged facts include that "in 2012, West succeeded in persuading Mr. Zhang and Superhawk to agree to begin to manufacture counterfeit *Outrigger* tires for the Defendants" (Paragraph 42) and that West knew they were counterfeit

**ORDER DENYING MOTION FOR RECONSIDERATION-    10**

OTR asks this court to read something into the jury's verdict which OTR did not present to the jury as a theory: that West's use of Superhawk to manufacture its production tires violated the Solideal-Superhawk agreement regardless of whether the production tires violated any of OTR's intellectual property rights in the Outrigger tire. Surely, if this is a theory OTR wanted the jury to consider, it would have been pled clearly,[5] it would have been made clear to the jury, and the jury instructions would have reflected it clearly.[6]

The dis-branded genuine Outrigger tires submitted by West to Genie for

---

because he "personally directed Mr. Zhang and Superhawk to make the Counterfeit Tires **using the OTR proprietary mold entrusted to Superhawk** to make the 355-sized *Outrigger* tire." (Paragraph 43). (Emphasis added).

[5] The Ninth Circuit upheld this court's rejection of OTR's proposed jury instruction asserting a claim for infringement of unregistered trade dress, agreeing with this court that OTR did not state in its complaint that it was pursuing a claim for infringement of unregistered trade dress. (ECF No. 632 at pp. 28-30).

[6] It is of no consequence that **post-trial**, in its "Opposition To Defendants' Renewed Motion For Judgment As A Matter Of Law," OTR arguably suggested violation of intellectual property rights did not matter in asserting that "[a]ll the evidence showed Superhawk was forbidden from competing with Solideal in regard to the 355 tires , and Solideal could not compete with OTR in the North American marketplace." (ECF No. 577 at pp. 19-20).

**ORDER DENYING MOTION
FOR RECONSIDERATION-      11**

testing, and West's production tires which were subsequently sold to Genie, are inextricably linked, but they are also clearly distinguishable. The jury did not find West's production tires were genuine Outriggers or counterfeit/infringing tires. West's sale of production tires to Genie for the period from May 2013 to May 2014 was the result of West's improper conduct in submitting dis-branded genuine Outrigger tires to Genie for testing. It was this conduct which allowed West to sell some of its production tires to Genie. The jury, however, did not find these production tires were manufactured or sold in violation of any of OTR's intellectual property rights. The sale of those tires to Genie for that one year period necessarily served as the measure of damages sustained by OTR as a result of West's improper conduct. The jury remedied that harm with its award of damages to OTR. Any sale now of West's production tires to Genie will not continue the harm to OTR. The jury's verdict reset the relationship between West and Genie going forward. Genie knows or should know a jury found West submitted dis-branded genuine Outrigger tires to Genie for testing to gain Genie's business in 2013-14.[7] Genie also knows or should know a jury found West's

---

[7] The jury did not render a verdict that the production tires were "unlawfully procured" by West as contended by OTR, nor did the jury "plainly" rest its verdicts on West's wrongful conduct in offering production tires for sale. The only wrongful conduct the jury clearly found was the false designation of origin regarding the development/test tires which allowed for the subsequent sale of some of West's production tires to Genie.

**ORDER DENYING MOTION FOR RECONSIDERATION-    12**

production tires do not transgress any of OTR's intellectual property rights in the Outrigger. Genie should now be fully informed as to whether it wants to purchase any more size 355 tires from West.[8]

## III. CONCLUSION

This court did not commit a "clear" error in denying OTR's renewed motion for a permanent injunction. Denial of that relief does not result in a "manifest injustice."[9]

//
//
//

---

[8] OTR says it did not inform the 9th Circuit about West's remaining inventory of unsold production tires because it did not appeal this court's denial without prejudice of its motion for a permanent injunction. This court's maintenance of the preliminary injunction pending appeal was, however, before the circuit. Therefore, the court questions why OTR did not cite the existence of the remaining inventory of unsold tires in opposition to West seeking dissolution of the preliminary injunction.

[9] While West's misconduct has been remedied by the jury's award of damages to OTR, it may still have some bearing on issues this court has yet to decide, in particular the awarding of attorney's fees and costs.

**ORDER DENYING MOTION FOR RECONSIDERATION-    13**

Plaintiffs' Motion For Reconsideration of Order Denying Permanent Injunction (ECF No. 687) is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and provide copies to counsel of record.

**DATED** this  11th   day of March, 2019.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
Senior United States District Judge

**ORDER DENYING MOTION FOR RECONSIDERATION-  14**